Bullock, &c., v. Grinstead & Co.

CASE 44—PETITION  EQUITY—JANUARY 27.

# Bullock, &c., v. Grinstead & Co.

APPEAL  FROM  JEFFERSON  CIRCUIT  COURT,  CHANCERY  DIVISION.

1. LEASE WITH OPTION TO RENEW—TIME OF ESSENCE OF CONTRACT.
   —Where husband and wife executed a lease upon the wife's property
   for a term of twenty-five years, the lessees obligating themselves to
   erect certain improvements and the lessors to have the option at the
   end of the term to take the improvements at a valuation to be fixed
   by referees, or to renew the lease on the same terms and conditions for
   an additional twenty-five years, time was of the essence of the contract
   giving the right of election to renew, and the lessors by failing to make
   their election on the day the term expired lost their right to force a
   renewal of the lease, and became bound for the value of the improve-
   ments according to the terms of the lease.
2. SAME—TIME OF EXPIRATION OF TERM.—The term having commenced
   on the first day of June, 1867, expired on the first day of June, 1892,
   and that was the last day for making the election.
3. CONTRACT BINDING ON WIFE.—The agreement to take and pay for
   the improvements, giving a lien on the property to secure the pay-
   ment, was not a collateral undertaking, but a direct and positive one,
   and was therefore binding on the wife.
4. POWER OF WIFE TO MORTGAGE HER ESTATE FOR HUSBAND'S DEBT.
   —Even though the wife had no power to bind herself personally, the
   husband was personally bound, and the wife had the power to bind
   her estate by mortgage to secure his obligation ; and the lease, in so far
   as it created a lien, was in effect a mortgage.   And it is not material
   that the obligation was to take effect in future.

RICHARDS, WEISSINGER & BASKIN FOR APPELLANTS.

1. Covenant to renew is a right of the lessee. (Wood on Landlord and
   Tenant, p. 675.)
2. The lessors having declined to buy, the lease was binding for fifty
   years. (Taylor's Landlord and Tenant, sec. 38; Taylor's Landlord
   and Tenant, sec. 43; Wilkinson v. Pettit, &c., 47 Barb., 230; Kramer
   v. Cooke, 7 Gray, 550; Holley v. Young, 66 Me., 520; Weed v.
   Crocker, 13 Gray, 220; Russman v. Ganster, 72 Penn. St., 285; Jack-
   son v. Kisselback, 10 John., 326; Deloshman v. Berry, 20 Mich., 292;
   Poole v. Brently, 12 East. (168), 402, new ed.; Shaw v. Farnsworth,
   108 Mass., 357; Wood on Landlord and Tenant, p. 678, note 3;
   Holman v. Abrams, 2 Duer. (N. Y.), 435; Wood on Landlord and
   Tenant, p. 674; Ryder v. Genney, 2 Robertson (N. Y.), 56.)

3. Appellees were not entitled to exercise the option. Cases explained: Williamson v. Johnson, 4 Mon., 253; Darling v. Hoband, 53 Mich., 599.

4. Appellees must hold under the lease or vacate. (Wood on Landlord and Tenant, p. 672; Pearce v. Holden, 8 Barb., 522; Rutgers v. Hunter, 6 John. Chy., 215.)

5. No claim can be asserted for value of improvements without express contract. (Wood on Landlord and Tenant, sec. 416, p. 672; Cutter v. Smith, 2 Wall., 491; Gudgell v. Duvall, 4 J. J. M., 229; Lawrence v. Knight, 11 Cal., 298.)

6. The agreement to buy improvements or renew was a personal covenant. (Taylor on Landlord and Tenant, sec. 263; Wood's Landlord and Tenant, secs. 336 and 337; Spencer's Case, 1 Smith's Lead. Cases; Thompson v. Rose, 8 Cowan, 262; Blount v. Harvey, 6 Jones (N. C.), 186; Kellogg v. Robinson, 6 Vt., 276; Masary v. Southworth, 9 Ohio St., 340; Hicks & Gill v. Doty, 4 Bush, 420.)

7. Appellees at best can only claim to be made whole. (Connelly v. Brantsler, 3 Bush, 702, and Schmidtheimer v. Eiseman, 7 Bush, 298, explained; Thomas v. Thomas, 16 B. Mon., 420.)


WILKINS G. ANDERSON of counsel on same side.

1. The lease has none of the elements of a mortgage. (Boone on Mortgages, secs. 3, 41; Payne's Adm'r v. Patterson's Adm'r, 77 Pa. St., 134–137; Adams v. Stevens, 49 Me., 362; Freeman's Bank v. Vose, 23 Me., 98; Hamilton v. Wagner, 2 Mar., 334.)

If the instrument was not a mortgage at its inception it could not by any subsequent event be converted into a mortgage. (Boone on Mortgages, sec. 45; Kearney v. Macomb, 16 N. J. Eq., 189.)

2. Mrs. Bullock's power was restricted by force of the statute to passing her title for the term of the lease. She is not bound by the covenants of the lease. (Sharpe v. Procter, 5 Bush, 396; Curd v. Dodd, 6 Bush, 681; Stewart on Husband and Wife, secs. 407, 410, 415; Leonis v. Lazzarovich, 55 Cal., 55; Silliman v. Cummings, 13 Ohio, 118; Bishop on Law of Married Women, vol. 1, ed. 1871, sec. 601; Felkner v. Tighe, 39 Ark., 357; Stidham v. Matthews, 29 Ark., 650; Hawley v. Tuyman, 29 Gratt., 728; McBryde v. Wilkinson, 29 Ala., 662; Moreau v. Detchemendy, 18 Mo., 522.)

3. In the absence of an agreement to do so the law imposes no obligation on the landlord to pay for improvements the tenant has made during his term. (Taylor's Landlord and Tenant (seventh ed.), sec. 335 a; Kutter v. Smith, 2 Wall., 491; Gudgell v. Duvall, 4 J. J. Mar., 229; Lawrence v. Knight, 11 Cal., 298; Taylor v. Baldwin, &c., 10 Barb., 582; Hite v. Parks, &c., 2 Tenn. Chy., 373.)

4. The covenants in the lease were personal. (Thompson v. Rose, 8 Cow., 266; Taylor's Landlord and Tenant (seventh ed.), secs. 436, 261;

Bullock, &c., v. Grinstead & Co.

Port v. Jackson, 17 Johns., 239; Garner v. Byard, 23 Ga., 289; Bailey v. Wells, 8 Wis., 157.)

5. The option to renew is with the lessee. (Bruce, &c., Ex'ors v. Fulton Nat. Bank, 79 N. Y., 154; Taylor's Landlord and Tenant (seventh ed.), sec. 49, note; Myers, Adm'r, v. Stilljacks, 58 Md., 319; Banks v. Haskie, 45 Md., 207; Taylor's Landlord and Tenant (seventh ed.), sec. 339; Eaton v. Lyon, 3 Ves., Jr., 690; McAlpine v. Swift, 1 Ball & B., 285; Pierce v. Golden, 8 Barb., 522; Rutgers v. Hunter, 6 Johns. Chy., 215; Hood v. Hartshorn's Adm'r, 100 Mass., 117; Hansen v. Myer, 81 Ill., 321; Gardner v. Watson, 18 Bradw., 386; Johnston v. Bates, 48 N. Y. Sup. Ct., 180; Gibson v. Holden, 115 Ill., 199.)

JOHN B. BASKIN FOR INFANT APPELLANTS.

1. The first term ended at 12 o'clock at night on June 1, 1892. (Wood's Landlord and Tenant, sec. 82.)

2. The obligation to either renew the lease or buy the improvements was obligatory upon the lessors, but was not correspondingly binding upon the lessees. This provision created a mere privilege, of which they could avail themselves or not as they might elect. (Smith v. Rector of St. Phillips Church, 107 N. Y., 612; Baurman v. Binzen, 65 Hun, 40.)

3. This contract can not be specifically performed without the landlord first making his election to renew the lease or take the improvements. Neither the chancellor nor the tenant can make the election for the landlord, even if 'the landlord flatly refuses to do it for himself. (Cases cited above.)

4. The most that Grinstead & Co. could demand would be an order compelling the landlord to make his election and to execute the election when made. They would have to choose their appraiser before they could maintain this action at all, and when such appraiser is chosen the court would compel the landlords to choose their appraiser within a certain time, and when the appraisement is made the court would then order the landlords to take the property or give the renewal. (Colson v. Thompson, 3 Wheat., 336–341; Harvie v. Banks, 1 Randolph, 408.)

5. At the time of the expiration of the first term there was no trustee in existence; no one, therefore, empowered to make an election. For that omission these infant remaindermen are not responsible. The only person who could make an election in behalf of these infants, if such an election was necessary, would be a chancellor.

BLAIN & KINKEAD AND HELM & BRUCE FOR APPELLEES.

1. A privilege to a lessor to renew his lease at the expiration thereof must be exercised on or before the expiration. (Renoud v. Dascon, 34

Conn., 512; Thiebaud v. First National Bank, 42 Ind., 212; Darling v. Hoban, 53 Mich., 599.)

2. A valid lien was created by the instrument in question to secure the payment of the value of the improvements when the lease should expire.

The lessees were not given a mere option or right to erect these improvements, they were *bound absolutely* to erect them; and Judge Bullock was bound absolutely to pay for them; and a lien was given upon this property to secure that obligation whenever it should mature. The parties to this instrument simply did in express terms what the law would have held to be the effect of the terms employed if they had executed a technical mortgage, and it makes no difference whether you call the instrument a "mortgage" or not. (Jones v. Jenkins, 83 Ky., 395.)

Under the Kentucky statute giving married women the power to convey their land by deeds executed with certain formalities, they have the absolute power of disposition over the land, or any interest therein, by any form of conveyance or for any purpose. (Smith v. Wilson, 2 Met., 236; Johnson v. Ferguson, *Idem*, 505.)

3. The question of whether or not the covenant ran with the land is not material, because we do not ask a personal judgment against the present owners of the land. We merely ask the enforcement of the lien upon the land itself.

Cases commented on and explained: Hansen v. Myer, 25 Am. Rep., 282; 81 Ill., 321; Thompson v. Rose, 8 Cow., 266; Blount v. Harvey, 6 Jones, 186.

4. The contract bound the lessor to pay for the improvements as it bound the lessee to make the improvements, the only question left being as to whether the lessor should permit the tenancy to expire with the end of the first term, or whether he would renew it for the second term. If he failed to elect to renew he was bound to pay for the improvements; so that no election was necessary.

But if it still be argued that such election was provided for, then this position is answered by the proposition of law, that if one party to a contract has a right of election until a certain time as between two courses to be pursued, and he fails to exercise that right, and the case is such that the election must be made by somebody, then the right of election passes to the other party to the contract. (Williamson v. Johnson, 4 Mon., 253, 256; Viner's Abridgment, vol. 9, p. 362; Story on Contracts, sec. 816; 1 Bouvier's Institutes, sec. 693.)

5. Whether viewed from the standpoint of what it would cost to erect the building, or from the standpoint of the capitalization of its rental value from averaging a long period, or from the standpoint of expert opinion, it is worth at least the sum fixed by the chancellor, which was $23,375.

Bullock, &c., v. Grinstead & Co.

CHIEF JUSTICE BENNETT DELIVERED THE OPINION OF THE COURT.

In 1867, Mrs. Mary Bullock, wife of Judge W. F. Bullock, owned as general estate a lot of ground in the city of Louisville, with the power to dispose of the same by will. Mrs. Bullock and her husband, on the 17th day of April, 1867, made and acknowledged, and had recorded, a contract with the firm of McKee & Cunningham, in substance as follows: They leased to said firm said lot "for the term of twenty-five years," commencing the 1st of June, 1867. The firm was to pay therefor three thousand dollars per annum, payable quarterly, being six per cent on the then estimated value of said property, and to pay all taxes assessed on the property. The property, at the option of either party, was to be periodically valued, and the firm was then to pay six per cent per annum on said valuation. The firm was also to erect upon said lot a stone or brick building of not less than eight thousand dollars in value, which was to be fully completed by the 1st of September, 1867, and to keep the same insured, and the building was to be liable for the rent reserved and all taxes assessed against the property. It was also agreed that "at the end of the *term aforesaid*, it shall be optional with the lessors to take the improvements which shall be erected thereon at a valuation to be fixed by referees, . . . payable in four equal installments, a lien being herein created and reserved on said premises for the payment of the same, or to *renew* the lease for same, on the same terms and conditions and stipulations contained herein, for an *additional* twenty-five years." It was also agreed that if the lessors should "renew the lease at the end of the second term of twenty-five years, they should take and pay for said improvements at a valuation

to be fixed by referees, the payments to be made in cash or in five equal installments, and the payment of the same is secured by a lien on said premises." Said firm assigned the lease to the firm of Monks & Cobb, and that firm assigned the same to the appellees. The conditions of the lease have been complied with by the appellees. There is no dispute about that matter. The first term of the lease expired on the 1st of June, 1892, and both Mrs. Bullock and her husband having died sometime before then, and Mrs. Bullock having, pursuant to the power, willed said property to the appellants, the appellees, on the 2d day of June, 1892, notified them that not having exercised their option to renew they considered the lease at an end, and would like to confer with them in reference to making a new lease. The appellants made no answer until several days had elapsed. They then denied that the lease had expired or that their right to renewal had expired, and claimed the right then to renew. The appellees then brought this suit to recover the value of the improvements, etc. The appellants denied that the lease had expired, and that Mrs. Bullock was bound by said contract to pay for the improvements, etc.

By the terms of the contract of lease, "the *term was twenty-five years*, beginning from the 1st day of June, 1867." "At the *end of the term* aforesaid it was optional with the lessors" to renew the lease, upon the same terms and conditions, for an additional twenty-five years, and if the option to "renew" was exercised, the terms of payment for the improvements were different from the terms of payment for the improvements in case the lessors elected to take them at the end of the first twenty-five years. If the language used to express the contract is to

be construed according to its common sense meaning (and there is no good reason why it should not be so construed), it means that the term of lease was twenty-five years and at the end of which time the lease expired, unless the lessors elected to "renew" for the term of twenty-five years more, in which event the lessees were bound to renew; and in case the lessors did not elect to renew the lease at the end of the term, they were to take and pay for the improvements upon the terms stipulated in the lease. We have no doubt that foregoing is the correct interpretation of the lease. Also it seems clear that as to the making the election to renew, time was of the essence of the contract, and the lessors were bound to make the election to renew the lease if they wished to do so upon the expiration of the first lease which was on the 1st day of June, 1892, and their failure to make the election on that day was an abandonment of their right to force a renewal and an election to take and pay for the improvements according to the terms of the lease, and which the lessees could enforce. And as the lessees were unconditionally bound by the lessors' option, it would seem to follow that the option should have been exercised upon the expiration of the lease.

But it is urged that the agreement to take and pay for the improvements was not binding on Mrs. Bullock because it was collateral to the lease and stood upon the same footing as to its binding force as a covenant of warranty in a married woman's deed, which has been held by this court not to bind her. Also that the lien reserved in the lease on the premises to secure the payment of the improvements was not binding on Mrs. Bullock, because it was an obligation to take effect *in futuro* and not *in*

*præsenti*, which was not binding upon her; and second, she can only bind herself by a mortgage lien, and the lien created by the lease not being a mortgage lien, she was not bound by it.

But it seems to us that the obligation was not a collateral one, but a direct and positive one to pay for improvements contracted to be put upon her property and to secure the payment for the improvements by lien upon the property. She had the legal right to sell and convey the title to her land, or such interest therein as she and her husband might choose; and she and her husband did choose to sell the exclusive right to the land for the term of twenty-five years. She and her husband also agreed with the lessees that they should erect improvements on the property worth not less than eight thousand dollars, which was to be paid for at a fair valuation at the end of the term, and a lien was given on the property to secure the payment. Now, here was a direct and positive agreement to pay for the improvements to be erected on her property, and a lien reserved to secure the payment. Let us concede, however, for the sake of the argument, that she had no power, by simple contract, to bind her estate for the payment of the improvements. But what is to be done with the lien that she created on her premises to secure the payment? But it is said that she had no power to create the lien for such purpose, because it is not a mortgage, and that she can only create a lien by mortgage. It is a fact that a mortgage is simply a lien created on property to secure the performance of a certain undertaking. It is also a fact that the husband and wife may execute a mortgage upon her landed estate that will bind it, to secure the performance of his undertaking or

Bullock, &c., v. Grinstead & Co.

obligation, or the undertaking or obligation of a third person, although she can not bind herself personally. It is also a fact that as a mortgage. is nothing but a lien created on an estate to secure the performance of an obligation which the wife may give upon her estate, a lien which she creates upon it by an instrument, just as solemn and formal, to secure the performance of an obligation, though not called a mortgage, is just as binding on her. The term "mortgage" used in a writing indicates a lien, and is enforceable without the addition of other formal words, and the expression, a "lien" is created to secure the performance of an obligation, is equivalent in meaning that the thing is mortgaged. Now, conceding that Mrs. Bullock was not personally bound by her contract to pay for the improvements, it will not be denied that Judge Bullock was personally bound by it, and was bound to pay for the improvements the sum that the referees put upon them, and Mrs. Bullock had the power to secure the performance of his agreement by giving a lien upon her property; and as she did give such lien in due and legal form and manner, the estate is bound for the payment of the price of the improvements. We think that there is nothing in the talk about Mrs. Bullock not being bound by the contract in reference to a lien, because it was made to take effect *in futuro,* for the reason, as we have just seen, that Judge Bullock had the right to make the contract and Mrs. Bullock had the power to secure its performance by giving a lien on her property. If he could make a binding contract upon himself to commence *in futuro,* and there is no doubt that he could in this case, she had the power to secure its performance by giving a lien upon her property.

The judgment is affirmed.