## Continental Fuel Company, et al. v. Haden, et al.

(Decided November 8, 1918.)

### Appeal from Muhlenberg Circuit Court.

1. **Landlord and Tenant—Forfeiture of Lease.**—The general rule is that no forfeiture will be decreed for a breach of the terms of a lease in the absence of a forfeiting clause, but that the parties will be left to their legal remedies for damages for the breach.

2. **Waste—Action for Under Section 2328 Kentucky Statutes.**—Under section 2328 of the Kentucky Statutes relating to actions against a tenant for waste, an action can be maintained only for voluntary waste; no action can be maintained for permissive waste, which consists merely in a failure to keep the premises in proper repair.

3. **Waste—Permissive—Action for.**—An ordinary action cannot be maintained against a tenant for permissive waste; cognizance of such actions is exclusively equitable.

4. **Forfeitures—Equity Will Not Aid.**—A court of equity will not lend its aid actively to enforce a forfeiture; a chancellor will not lift his hand to aid a litigant in enforcing a forfeiture.

5. **Waste—Equitable—When Restrained.**—A court of chancery will restrain equitable waste only when it is shown that the particular tenant has been guilty of a wanton and unconscientious abuse of his rights, ruinous to the interests of other parties.

TAYLOR, EAVES & SPARKS and HERBERT MEREDITH for appellants.

D. M. ROLL and LAFFOON & WADDILL for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

This is an appeal from a judgment of the Muhlenberg circuit court which cancelled a mining lease, restored the leased premises to appellees, and awarded them a writ of possession therefor. The appellees, J. C. Haden and Sue Haden, his wife, and Mrs. A. M. Bohannon, were the plaintiffs below and will be called the lessors in this opinion; the appellants, the Continental Fuel Company, J. M. Thompson and Sallie J. Thompson, his wife, are the lessees, and will so be referred to, for brevity.

The facts shown by the record are substantially as follows: On June 17th, 1907, the lessors, Haden and others, executed and delivered to the lessees, Thompson and others, a lease granting the lessees the privilege of opening, developing and operating a coal mine upon

421 acres of land in Muhlenberg county, for a period of fifty years. It was provided, among other things, that the lessees should pay to the lessors a royalty of two cents per ton on all coal taken from the leasehold, but that the lessees should pay at least the sum of $1,200.00 per annum as royalty, whether sufficient coal should be mined to produce that sum at the rate of two cents per ton, or not; and by an amendment to the lease, executed in 1909, the minimum annual royalty was increased to $1,500.00. The lease further gave the lessees the use of 25 acres of the surface of said land, to be thereafter surveyed, and also the privilege of cutting such timber as might be necessary to erect their tipple, and to timber all the shafts of the mine.

Upon their part the lessees agreed to operate the mine, at all times, in a workmanlike manner, and continuously during the term; to develop the mine to a daily capacity of 500 tons within 24 months; and, when so developed, to mine not less than sixty thousand tons of coal per annum; and if the lessees should fail, in any year, to produce the fixed minimum tonnage then the difference between the actual tonnage produced and the minimum tonnage should be paid for, as above stated. And, to secure the faithful performance of the contract to develop the mine to the capacity above specified the lease required a bond from the lessees in the sum of $10,000.00.

The lease also gave the lessors the right to erect not exceeding 30 tenant houses, which the lessees should rent at such prices as were usually charged for similar houses, and should pay the lessors seventy-five per cent of the rents so received.

And, although the lease is careful to fix the rights of the respective contracting parties, and requires of the lessees the bond above referred to, it contains no forfeiting clause.

The lessees entered upon the leased premises, opened, equipped and developed a large coal mine thereon, and built a railroad spur of more than half a mile in length at a cost of $8,500.00 for use in operating the mine. They installed costly and extensive mining machinery, and developed the mine to a capacity that enabled it to produce from 500 to 800 tons of coal per day. The mining machinery and apparatus installed in the mine cost the lessees

$82,100.00, thus making a total expenditure by the lessees of nearly $100,000.00.

The royalties paid to the lessors up to January 1st, 1915, aggregated $11,235.00; and, although during one year the mine was operated at a loss, the minimum royalty called for by the lease was paid.

The lessees experienced many financial hardships in the course of the development of this mining property, due principally to the dullness of the coal market during the greater portion of the time. Few of the coal operators in western Kentucky made a profit during the years 1914, 1915 and 1916; and during that period the lessees operated only about one-half of the time. Furthermore, in January, 1913, the mine was threatened with inundation from an unusual rise in Green river, and this inundation was only prevented at a cost of about $6,000.00.

At the time of the execution of the lease in 1907, the fee simple title of the land leased, including the surface and the coal, was worth about $20.00 an acre, or an aggregate of $9,000.00; and, as above stated, it was upon this leasehold that the lessees constructed improvements and installed mining machinery and equipment of the value of about $100,000.00.

On November 26th, 1915, the lessors filed this action in equity in the Muhlenberg circuit court, seeking a forfeiture and cancellation of the lease, and a recovery of the leased property, upon the ground that the lessees had broken the covenants of the lease by committing waste upon the leased premises; for an injunction restraining the lessees from further operating the mine and committing further injury thereto; for $20,000.00 damages for the waste complained of; and for the further sum of $545.27 claimed to be due for royalties and rent of the miners' houses above mentioned.

But the court having required the lessors to elect between the three causes of action set forth in their petition, they elected to prosecute their action for a forfeiture and cancellation of the lease and a recovery of the leased premises.

The answer, and counterclaim traversed every material allegation of the petition; set up many matters in estoppel; claimed damages for the breach of the lease by the lessors in refusing to set aside the 25 acres and to permit the lessees to cut mining timbers, for which judg-

ment was prayed; and, the improvements, machinery and equipment which had been placed upon the property by the lessees were alleged to be worth $75,000.00, for which judgment was asked, in the event a forfeiture or cancellation of the lease should be decreed.

Issues having been made and a large amount of proof taken thereon, the chancellor decreed a forfeiture and cancellation of the lease and the restoration of the leased premises to the lessors; and, although the lessors did not claim the improvements, machinery and mining equipment, the effect of the judgment is to turn over this property to the lessors. From that judgment the defendant lessees have prosecuted this appeal.

From the foregoing recital, it will be seen that the lessors sought and obtained a cancellation of the lease for waste; and, it appears from the pleadings and the proof that the elements relied on as constituting waste were, (1) that the lessees did not pay the royalties due under the contract; (2) that they were not working the mines properly; (3) that they were not taking sufficient coal therefrom; and, (4) that they were maintaining the mine in an unsafe condition.

The first and third grounds may be disposed of summarily. As above stated, this action was filed on November 26th, 1915. By the terms of the lease the minimum royalty for the year 1915 was not due until January 15th, 1916, and, it is conceded there had been no default in the payment of the annual royalties at the time the suit was filed. And as the case is to be tried upon the charges set forth in the petition, we are not concerned with what has happened since. The lessees are not to be held accountable for failing or refusing to do anything under the contract after suit was brought for the cancellation. Ross v. Sheldon, 119 S. W. 225.

There was due to the lessors on the monthly royalties, at the time of the institution of this suit, the sum of $54.42; and, the payment of even this small amount had been arranged with the Continental Fuel Company shortly after it leased the property to Ballou, by its settling with Haden and delivering to him an order upon Ballou or his company, which Haden accepted in payment thereof. It is true that payments for subsequent royalties have been tendered to the lessors and declined by them; but, as above pointed out, that fact cannot affect or

change the facts upon which this suit was instituted, and must be tried. As was suggested in Ross v. Sheldon, *supra,* the suit for cancellation of the lease may have rendered it unwise for the lessees to risk further payments.

The third element of waste, that the lessees have not sufficiently developed the capacity of the mine, or increased its output to a greater extent, is also irrelevant to the issue in this case, since the lease provides a minimum royalty which has been fully paid. The capacity of the mine has been developed to the extent called for by the lease. And, the parties having agreed upon a minimum royalty which the lessees should pay and the lessors should accept, it is not for the court to say that a different standard should be set up by which a larger royalty should be paid the lessors. Indeed, if the lessees should pay the stipulated royalty without taking out any coal, it is difficult to see how the lessors could be damaged under the contract; on the contrary, they would be receiving their royalty, and retaining the coal. So, laying to one side the two elements of the alleged insufficient development of the mine, and the payment of royalties upon the alleged insufficient quantity of coal taken out, either as removed from consideration by the proof, or as irrelevant under the contract, we have remaining the second and fourth items relied on to constitute waste, to-wit, that the lessees were operating the mine in a negligent manner, and were maintaining it in a dangerous and unsafe condition.

As appellants' counsel, in their brief, disavow any intention to enter into a detailed analysis of the one thousand pages of testimony contained in this record, and counsel for the appellees are equally as modest, we will emulate the example thus set by speaking of the effect of the proof without attempting any analysis thereof. Indeed such an attempt would needlessly extend this opinion beyond a reasonable length, and would serve no useful purpose.

As heretofore stated, the lease in question contains no forfeiting clause.

The general rule is that no forfeiture will be decreed for a breach of the terms of a lease in the absence of a forfeiting clause, but that the parties will be left to their legal remedies for damages for the breach. The rule is stated as follows in 16 R. C. L., page 1115:

"It is the general rule that the breach by a lessee of the covenants or stipulations on his part contained in the lease does not work a forfeiture of the term in the absence of an express proviso to that effect in the lease, the lessor's remedy being by way of a claim for damages; and this includes in case of a lease of farming lands a breach of the covenant to work or cultivate the land in a husbandlike manner; and the same has been held true as to a mining lease, including gas and oil leases, as regards the failure to exploit the lands, where the full consideration for the lease was paid in advance, as where the lessee was a corporation and the consideration was a certain amount of its stock. The parties to a lease for a term of years may, however, lawfully provide for its forfeiture for the breach of the lessees' covenants, or the conditions contained therein, and while the courts are said to abhor forfeitures they will not hesitate to give effect to such provisions when clearly provided for by the parties; and this is equally true as regards leases in fee."

Again, in 24 Cyc. 1349, the rule is stated as follows:

"A tenancy cannot be terminated for a breach of covenant by the lessee where there is no provision in the lease for a forfeiture or right of re-entry on the occurrence of the breach. This rule applies equally well not only to a breach of covenant to pay rent, but also to the breach of the covenant against assigning or subletting, the breach of a covenant as to the payment of taxes and assessments, the breach of a covenant as to the use of the premises, or the breach of a covenant to make repairs."

But, in Ross v. Sheldon, 119 S. W. 225, a case quite similar in its controlling facts to the case at bar, this court, without indicating the character or extent of the remedy, said:

"There is no forfeiture clause in the contract, nor does it provide a penalty for a breach of any of its conditions. This fact, however, did not relieve the lessees from the duty of a reasonable compliance with its terms."

Moreover, the lessees in this case contracted to operate the mine in a workmanlike manner, and continuously during the term.

There can be no doubt, therefore, that a lessor is entitled to relief against the misdoing of his lessee; the only question for determination in such cases being the

character and extent of the relief applicable to the specific wrong committed. Fisher's Exr. v. Haney, 180 Ky. 259; Hughes v. Busseyville O. & G. Co., 180 Ky. 545.

As a solution for this question the lessors rely upon section 2328 of the Kentucky Statutes, which reads as follows:

"If any tenant for life or years shall commit waste during his estate or term, of anything belonging to the tenement so held, without special license, in writing, so to do, he shall be subject to an action of waste, shall lose the thing wasted, and pay treble the amount at which the waste shall be assessed." See also sec. 2329.

It will be observed that this statute provides certain penalties and forfeitures upon the commitment of waste by the tenant; that the action is founded solely upon "waste." And, the kind of action and the character of waste for which it may be maintained, are not indicated. The lessees insist, however, that the statute does not apply in this case and that there can, under no circumstances, be a forfeiture and cancellation of the lease under consideration, because that instrument does not, by its terms, provide therefor; but if they should be mistaken in this position, and it should be held that the statute does apply in all proper cases, they further insist that it cannot be invoked in this equity action; and, that injunctive relief will not be afforded unless it be clearly shown, as was said by this court in Landers v. Landers, 151 Ky. 206, that the lessees were "guilty of wanton and unconscientious abuse" of their rights, and "did that which a prudent man would not do with his own property."

It is further contended that this statute, in any event, provides for a forfeiture only in cases of voluntary waste, or intentional destructive acts, and not for permissive waste, which is the mere omission by the tenant to keep the premises in proper repair; and, that since the lessees own the mining machinery and the improvements placed upon the premises, the lessors' claim for waste must be restricted to the allegations of the petition, measured by the terms of the lease, to-wit, that the lessees were operating the mine in an unworkmanlike and dangerous manner. The lessees contend that this has been the unbroken rule in Kentucky since the decision in Smith v. Mattingly, 96 Ky. 228.

In Smith v. Mattingly, *supra,* the remainderman brought an action in ordinary against the life tenant to recover damages, and also the land, for alleged waste, charging that the waste consisted in permitting the dwelling house to become untenantable, and other buildings to become dilapidated; a large part of the farm to be thrown open and trampled upon by cattle and to grow up in shrubs and briers; and, that the life tenant had destroyed and removed from the land a large portion of the fence that was around it. The action was brought under chapter 66, article 3, of the General Statutes, which was identical in terms with section 2328 of the Kentucky Statutes, above quoted. In construing the statute, the court said:

"There is an obvious and well recognized distinction between voluntary waste, which consists in the commission of some destructive act, and permissive waste, consisting in the omission by a tenant for life or years, to keep the land and tenements in proper repair. And that the statute quoted was intended to authorize an action for *voluntary* waste only, not for *permissive* waste, is made, by the language used, too clear for discussion."

The court then proceeded to discuss the question whether an action in ordinary, in the nature of trespass on the case, could be maintained at all in this state by a remainderman against the tenant for permissive waste; and, after a review of the authorities the court reached the following conclusion:

"We must, therefore, conclude that the legislature, becoming convinced, as had the courts, that the remedy by equitable proceeding is more easy, expeditious and complete than by an action ordinary, intended to restrict the right to sue at law to the action for voluntary waste, provided for in section 1, quoted (now section 2328) whereby in case the jury finds the waste was wantonly committed, treble damages may be assessed, leaving exclusive jurisdiction in cases of permissive waste to courts of equity. It seems to us the lower court erred in sustaining a general demurrer to the plaintiffs' petition, because it is therein distinctly stated defendant had destroyed and removed from said land a large portion of the fencing that was around it, which amounted to an averment of voluntary waste, for which an action may be maintained under the statute."

To the same effect, holding that an action under section 2328, *supra,* can be maintained only for voluntary waste, and that actions for permissive waste are exclusively equitable, see Taylor v. Harvey, 30 Ky. L. R. 1045, 100 S. W. 258; Abel v. Wueston, 143 Ky. 513; Sale v. Smith & Nixon, 147 Ky. 146; Fisher's Exr. v. Haney, 180 Ky. 259.

In view of this distinction, long and well established in this jurisdiction, it might well be argued that the statute applies only in a common law action of waste and should be followed if the lessor would forfeit the lease for voluntary waste, and that the equitable proceeding lies for the purpose of enjoining and restraining permissive waste. At common law where a limited estate was created by deed, the particular tenant was not liable for waste, unless it was so expressly stipulated in the conveyance, because the law would not protect parties who did not take care to protect themselves. This harsh rule was, however, altered by the statutes of Marlborough (52 Hen. III, c. 23) and of Gloucester (6 Edw. I, c. 5), which extended the liability for waste to conventional tenants for life and to tenants for years. The common law remedy for waste, as extended by the statutes of Marlborough and Gloucester was, by a writ of waste, in which the thing wasted was forfeited, and treble damages were recoverable. Bispham's Eq., sec. 430; Holdsworth's "History of English Law," III, 104. The inefficiency of the common law remedy, and the abolishing of the writ of waste in England, led to the equitable remedy by which waste, either present or anticipated, may be enjoined.

In Poertner v. Russell, 33 Wis. 193, it was said:

"The common law action for waste is of rare occurrence in modern times, and the various remedies given by the statute of Gloucester and other English statutes, have given way to the action on the case for waste; and the latter, in its turn, has been very nearly superseded by the action in equity to stay waste. This equitable remedy is sustained on the ground that the remedy at law is at best an inadequate one."

From this it is clear that section 2328, *supra,* is based upon the old English statutes and provides a remedy for forfeiture and damages in cases of voluntary waste, leaving permissive waste to be dealt with in equity. Smith v. Mattingly, *supra.*

But forfeiture was not a part of the equitable relief afforded in cases of waste; on the contrary, the relief always has been by injunction. It is well settled that a court of equity will not lend its aid actively to enforce a forfeiture. A chancellor will not lift his hand to aid a litigant in enforcing a forfeiture.

Thus, in Oil Creek R. R. Co. v. The Atlantic & Great Western R. R. Co., 57 Pa. 65, the bill sought to enforce the forfeiture of a lease for failure to build a road within the period expressly prescribed in the lease. The court was asked to enforce that which the parties had agreed should be a forfeiture; but it refused to do so, on the ground that a court of equity will never lend its assistance to the enforcement of a forfeiture, but will leave the parties to their legal remedies.

But we need not pass upon the question whether an action to forfeit a lease must be an ordinary action under the statute, since the lessors are not entitled to any relief, either ordinary or equitable. Mullins v. Deems, 124 S. W. 828, relied upon by the lessors, presented a clear case of voluntary waste, and the opinion does not indicate whether the case was an ordinary or an equitable action. That question seems not to have been raised. But the rule is that a court of chancery will restrain equitable waste only when it is shown that the particular tenant has been guilty of a wanton and unconscientious abuse of his rights, ruinous to the interests of other parties. Landers v. Landers, 151 Ky. 206, citing with approval Turner v. Wright, 6 Jur. N. S. 809, 29 L. J. Ch. N. S. 598, where Lord Campbell defined equitable waste to be "that which a prudent man would not do with his own property."

It cannot be said, however, under the proof in this case, that the lessors have shown any voluntary waste upon the part of the lessees; at most, any failure upon their part to operate the mine in a workmanlike and safe manner has been not only involuntary, or permissive, but inconsequential.

It has not been shown that any accident has occurred in the mine, employing from 70 to 125 miners, or that it has been operated in a manner materially different from other mines in that field. The lessees have had their difficulties enlarged, as they claim, not only by the lessors' refusal to perform their part of the contract by furnish-

ing the lessees with mining timber, and the 25 acre tract, but, also by the institution of this action, as well as by a civil prosecution in the circuit court to forfeit the lease.

In view of the fact that the lessees have expended nearly $100,000.00 in opening and developing this mine, a court of equity should be slow in affirming a judgment which, in effect, takes these improvements from their owner. Treating the case, therefore, as properly brought, we are of opinion that the lessors have not made out a case that would justify a forfeiture of the lease.

Judgment reversed and action remanded with instructions to the circuit court to dismiss the petition.