## Auxier Coal Company, et al. v. Big Sandy and Millers Creek Coal Company, et al.

(Decided February 24, 1922.)

### Appeal from Floyd Circuit Court.

1. Mines and Minerals—Injunction—Pleading.—Where plaintiff sued to enjoin the disposition of equipment on leased premises the trial court properly allowed the defendant to interpose the defense that the mineable coal in the land had been exhausted, since the petition and the answer are both founded on the same contracts of lease.

2. Appeal and Error—Finding of Chancellor.—Evidence examined and held to warrant the finding of the chancellor that the mineable coal in the leased land was exhausted.

3.   Mines and Minerals—Lease.—All of the terms of the lease must be read together with a view of ascertaining the intent and purpose of the instrument as a whole. And while the lease may run for a term of twenty-five years if it appears that the mineable coal has been exhausted the lease will be regarded in law as having terminated.

4.   Mines and Minerals—Lease—Royalties.—Minimum royalties will not be exacted from the lessee after the termination of the lease on account of exhaustion of minerals in the land, since the purpose of the lease was to require mining and that purpose must necessarily be defeated by the exhaustion of the mineral product.

5.   Mines and Minerals—Abandonment of Lease.—The provision of a lease giving to the lessor the equipment on the premises in the event of abandonment of the mining by the lessee within five years, construed to be inapplicable to abandonment resulting from exhaustion of the mineral product.

6.   Mines and Minerals—Lease.—A provision of a lease giving to lessor at the end of the term thereof the option of purchasing the equipment on the premises at a valuation to be fixed by appraisers, held not to be violated to the prejudice of appellant in view of the fact that the mineral product was exhausted at the time lessees acquired the property and the further fact that the lessors did not at any time offer to have the equipment valued and pay for the same or show that by the disposition of it they have been or will be damaged or otherwise prejudiced.

7.   Trial—Issue Out of Chancery.—It was not an abuse of judicial discretion to overrule a motion for an issue out of chancery, where the motion was made after the proof had been taken and where it related to claims for damages which depended on a primary question, the decision of which rendered it unnecessary to pass on the question included in the motion.

C. B. WHEELER for appellants.

A. J. MAY and B. F. COMBS for appellees.

OPINION OF THE COURT BY JUDGE MOORMAN—Affirming.

On December 18, 1918, appellants, Auxier Coal Company and Auxier Coal and Mining Company, filed this suit in the Floyd circuit court against appellees, the Big Sandy and Millers Creek Coal Company and L. Blenkinsoff, trustee, wherein they sought an injunction restraining and enjoining appellees from selling or disposing of the mining equipment and materials on a tract of land in Floyd county. Their alleged cause of action is based on a lease of June 15, 1911, from J. C. B. Auxier, and the Auxier Coal Company to the Mary Luck Coal Company, and also on a contract of sale and lease of June

21, 1917, between the Auxier Coal and Mining Company and the appellee Blenkinsoff.

Appellees filed answer admitting the sale of a part of the equipment, but justifying it on the ground that all the mineable coal had been taken from the leased property. In a separate paragraph they asserted a counter-claim arising out of the misrepresentation and fraud of appellants, in inducing them to sign the lease of June 21, 1917, by reason of which they alleged damages in the sum of $4,585.00.

Objections to the interposed defense and to the counter-claim were overruled, and thereafter appellants with J. C. B. Auxier filed additional and amended pleadings asking judgments for various sums, representing minimum royalties declared to be due under the leases in controversy. They also sought judgment for $2,050.00, which sum they averred was realized by appellees from the sale of mining equipment in violation of the contracts of lease. The issues were completed and on the final hearing the temporary injunction was dissolved, the petition of appellants dismissed, and the costs adjudged against them, although they were adjudged to be entitled to the sum of $43.77, balance of royalty due, which sum had theretofore been paid into court.

On June 15, 1911, J. C. B. Auxier and the Auxier Coal Company, joint owners of the land involved in this controversy, approximating 500 acres, leased the same to the Mary Luck Coal Company for a term of twenty-five years. The lease provided for the payment of tonnage royalties to the lessors of nine cents per ton on all coal mined, with minimum royalties of $750.00 for the second year, $1,000.00 for the third year, $1,500.00 for the fourth year and $2,500.00 for each year thereafter.

After operating or attempting to operate for two or three years the Mary Luck Coal Company became financially involved and went into the hands of a receiver. The lease was sold and purchased by S. R. Auxier, who assigned his bid to his father, J. C. B. Auxier, both of whom were officers of the Auxier Coal Company. The Auxier Coal and Mining Company was then organized and became the owner of the lease and the mining equipment on the property, and on June 21, 1917, the latter company sold the lease and leasehold estate to appellee, Blenkinsoff, as trustee. This was an outright sale of the equipment and the original lease for $10,000.00, which

sum has been paid. The purchaser later transferred his rights thereunder to the appellee, Big Sandy and Millers Creek Coal Company. In many respects the two leases are identical but there are distinguishable features, which form the basis for some of the controversies arising in this action.

The rulings complained of here are: (1) The refusal to strike from the answer and counterclaim the demand of appellees for damages on account of the alleged fraudulent representations made by appellants in inducing appellees to sign the lease; and also the defense that the mineable coal in the land was exhausted. (2) The disallowance of the minimum royalty of $2,500.00 for each of the years 1917 and 1918 under the lease of June 15, 1911; the disallowance of $2,000.00 as minimum royalty under the lease of June 21, 1917, $500.00 of which was claimed for the year 1917 and $1,500.00 for the year 1918; and the dismissal of appellants' claim for $2.050.00, which amount was admittedly realized by appellees from the sale of part of the mining equipments. (3) The refusal to adjudge to appellants ownership of the equipment on the premises at the time appellees ceased operating, or in any event to require a valuation of the equipment and to accord to appellants the option as provided in the lease of June 15, 1911, of purchasing the same at the valuation made. (4) Adjudging that the mineable coal in the land was exhausted.

The determination of the first three grounds is largely if not wholly dependent upon the decision reached with respect to the last one. If the mineable coal in the land was exhausted at the time this action was instituted and if the existence of that fact terminated the lease, it would inevitably follow that claims for royalties thereafter arising are without merit; and likewise the defense based on that ground was properly interposed, since it assailed the validity and existence of the contract on which the action was founded.

The evidence on the issue as to whether the mineable coal in the land was exhausted is extensive and contradictory but on the whole it more than sustains the adjudged fact. Furthermore, there is evidence in the record distinctly indicating that the depleted condition of the land existed when the lease of June 21, 1917, was made, and that ordinary observation of previous mining operations thereon would have conveyed information as to the impracticability of successfully conducting the operation

undertaken by appellees; also in these circumstances it would have been apparent that profitable mining was not feasible, because there was not sufficient mineable coal for that purpose. Substantial evidence supports the view that the coal theretofore mined was really taken from a pocket which in the earlier operations had been exhausted. But whatever opinion appellants may have entertained at that time, as to these disputed questions, is not of material import since the court below determined and adjudged that the mineable coal was exhausted and on that issue the evidence fully justifies the judgment.

The exhaustion of the mineable coal in the land must, in our view of the law, be held to have the effect of terminating the contract. Any other construction would be unjust and would violate the proclaimed purpose of the lease. It was agreed in the lease of June 15, 1911, that the lessee should have the exclusive right and privilege of mining all seams of coal in or under the leased premises, and, further, that the lease was made for the sole and "only purpose of mining and shipping coal and manufacturing and conducting a general merchandise business in connection therewith." While the term was for twenty-five years and the lessee agreed to pay stipulated minimum royalties during the term, the intent and purpose of the lease must be read into its provisions, and it having become impossible through no fault of appellees to effectuate that purpose, it necessarily results that the lease is terminated. (Vol. 6, R. C. L., page 1005.) Hence, appellants' claims to minimum royalties, arising after the minerals were exhausted, are impossible of sustention.

The claim of $2,500.00 for each of the years of 1917 and 1918 is based on the lease of June 15, 1911, which provided for varying minimum royalties for the first five years and thereafter for a minimum of $2,500.00 annually. Appellees acquired their lease on June 21, 1917, and this suit was instituted December 28, 1918. It must be considered, however, that the lessors in the lease of June 15, 1911, are in fact, if not in name, the lessors of June 21, 1917. Their relationship to the lease of 1917 binds them to the terms and conditions therein contained. It is stated in that lease that, except as to the payment and rate of royalties and the minimum royalty set out, it was made upon the terms and conditions of the lease of 1911. The change in the royalties was, that instead of

the payment of nine cents per ton on all coal mined as in the former, the latter lease provided for the payment of ten cents per ton, and also for the first year there should be no minimum royalty but only the royalties on the coal actually mined during that year. Accordingly, the minimum royalty was not effective until June 21, 1918, which was six months before this suit was filed. If there was mineable coal in the land at that time, by which is meant coal that could be profitably mined by judicious methods, the minimum royalty clause would apply. But an examination of the evidence justifies the conclusion that there was no mineable coal in the land at the time. It follows that the provision with reference to minimum royalties, being inseparable from the mutual rights and obligations created by the lease and the objects therein to be attained, cannot be held obligatory, when the lease itself was in fact terminated though its termination had not been adjudicated. It must be concluded that the claims of J. C. B. Auxier and the Auxier Coal Company for royalties were properly disallowed. The same reasons compel the disallowance of the claims of the Auxier Coal and Mining Company.

It is earnestly insisted that under the provisions of the lease of June 21, 1917, appellants were entitled to the equipment on the leased premises upon the cessation of operations. The provision relied on reads:

"It is further agreed by the parties hereto that if the said mine and leases herein conveyed should be abandoned by the parties of the second part, their successors or assigns within five years from this date the said premises, equipment, improvements and rights and privileges thereunder, including improvements that may have heretofore been placed thereon, shall revert and be forfeited to the parties of the first part."

This provision, as well as all others, must be construed in the light of the purposes sought to be carried out by the lease. Had appellees abandoned the property when there was mineable coal therein there would be plausible reason for the contentions advanced, for the provision in question was manifestly inserted to provide against such a contingency. But it is inapplicable to an abandonment made necessary by the exhaustion of mineral products. Nor can the position be maintained under the lease of June 15, 1911, which provides that in the event the lessee shall abandon the lease, when not prevented by strikes, riots, damages to or destruction of im-

provements or failure to obtain transportation of coal mined, for a period of six months, the lessor shall have the right to re-enter and take possession of the premises and of all property and improvements of the lessee thereon. That provision was obviously inserted to guard against abandonment at a time when the mine could be profitably·operated and not against an abandonment resulting from an exhaustion of the mine.

Subsidiary to this contention it is said that if the lessors were not entitled to the equipment as a matter of right under the provisions cited, under section 15 of the old lease the equipment and improvements should have been valued at the termination of the lease and appellants given the option of purchasing the same, and that by selling a part of the equipment appellees violated this clause of the lease. And they insist it was error to dismiss the petition which sought to prevent the appellees from further violating that provision.

The argument is sound in theory, but both parties by their pleadings made claims based on the lease, necessarily drawing in question its enforcibility as against appellees, and, as we have seen, on the determination of that issue hinges the questions raised on this appeal. Section 15 and kindred provisions of the old lease, the substance of which has been given, contemplated operations under the lease and provided that at the end of the term, the lessor should have the right of purchasing the equipment on the premises at a valuation to be fixed according to the method specifically set out. Such a clause is not illegal as appellees argue. (Bullock, etc. v. Grinstead & Co., 95 Ky. 261; Bank of Louisville v. Baumeister, 87 Ky. 6.)

Nevertheless this provision is controlled by the general purpose of the lease and the adjudicated fact that the coal is exhausted. The exhaustion existed not only at the date of the filing of this suit, but, giving the evidence the effect given it by the chancellor, which was proper, it also existed at the time the lease of June 21, 1917, was made, and, as we have observed, there is evidence tending to show that appellants were apprised of the condition of the mine at that time. Must the provision, therefore, be strictly enforced under such conditions? We think not, for if appellants knew the condition of the mine, though honestly believed it to be susceptible of profitable operation when in fact it was not, in good conscience they cannot be permitted to enforce a provision which is interdependent upon other unenforcible pro-

visions and about which the other party was misinformed when the contract was made. Moreover, a temporary injunction was issued when the suit was brought and it remained in effect until the final judgment, but there is nothing in the record to indicate an offer on the part of appellants at the time the suit was filed or thereafter to have any of the equipment valued and to pay for same, nor is there anything tending to prove that by the disposition of it they have been or will be damaged or otherwise prejudiced. It was not error for the court to include in the judgment a dismissal of the temporary injunction.

It was not an abuse of judicial discretion to overrule the motion for an issue out of chancery. The motion was questionable as to timeliness, besides it related solely to the claims for damages which depended on the primary question of whether the lease was terminated. That question was decided against appellants, thus rendering it unnecessary to pass on the issues that appellants desired submitted to a jury.

For the reasons indicated the judgment is affirmed.