# Gambill's Administrator et al. v. Ellser Coal Company.

(Decided June 18, 1929.)

(As Modified, on Denial of Rehearing, October 22, 1929.)

O. H. POLLARD and TURNER & CREAL for appellants.

J. SMITH HAYS for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

On July 12, 1919, W. E. Gambill and A. L. Gambill, who owned two tracts of land in Breathitt county, executed a coal-mining lease thereon to the Gambill Coal Company, a copartnership. The lease, which was to run for 25 years, provided for a royalty of 15 cents per ton for all coal mined during the World War, and 10 cents per ton for coal thereafter mined. It further provided for a minimum royalty of not less than $100 per month, with the stipulation that, if in any month the royalty on the coal mined did not amount to $100, the deficiency might

be made up by royalties in excess of the minimum in any succeeding month of the same year. There was the further agreement that the minimum royalty should be paid in all cases except where the lessees were prevented from mining "by floods, explosions and other unavoidable accidents or casualties" beyond their control, and that in the event operations ceased from any such causes they should notify promptly the lessors, and that no claim for any abatement of royalty could be made or allowed unless prompt written notice was given. The lease was sold and assigned to Ellison and Slusher, trustees, and at the same time the lessors entered into a supplemental contract with Ellison and Slusher. After referring to the original lease and its sale and transfer, the contract recited that "parties of the first part hereby agree to and make the following alterations and changes in said lease." Among the provisions of the contract are the following:

"First. The said parties of the first part hereby agree with the parties of the second part, that if at any time during the life of this lease or any renewal thereof, second party desires to remove any coal from adjacent or adjoining lands, through or over the land embraced in the original lease the second party may do so by paying one (1c) cent per ton to the lessor, William E. Gambill, his heirs or assigns, and in the event of any removal of any coal as above described, the second party agrees to render a monthly statement and to pay same as payments made under the original lease.

"Second. It is also agreed by the parties of the first part that the lease herein referred to shall be for the term of thirty (30) years from and after the date thereof, instead of for the period of Twenty-five (25) years as set out in said lease.

"Third. It is agreed that on the termination of this lease or any extension granted thereof that the said parties of the second part may remove from the leased premises all of the personal property, fixtures and appurtenances that have been placed thereon by them, provided that on said termination they have complied with all of the terms of this lease, and have paid the parties of the first part all sums of money due them under this lease, but they are not to remove any buildings erected on said leased premises."

On March 2, 1921, Ellison and Slusher conveyed all their rights to the Ellser Coal Company, which assumed all of their liabilities under the lease. The Ellser Coal Company paid the Gambills a large sum of money for the lease contracts and also spent a large sum of money in the equipment of the mine. On one of the tracts the coal was not of sufficient thickness and quality to justify mining operations. All the coal of sufficient thickness and quality to be mined, with the exception of the pillars and ribs, was removed from the other tract by January 1, 1924. On August 6, 1924, written notice was given the lessors that, owing to a breakdown in the machinery in the power house, and other casualties beyond its control, it was prevented from operating the mines, and that no minimum royalty would accrue for the month of August, or any subsequent month, until the machinery was repaired and other casualties overcome. Thereafter the lessee continued to pay the minimum royalty up to and including October, 1924. Later on a controversy arose between the lessors and the coal company with respect to the payment of minimum royalties. On January 8, 1925, the lessee wrote the lessors that the coal had been exhausted and that the lessee was no longer liable for the minimum royalties. Not being able to reach an amicable settlement of the matter, the lessors brought this action on April 9, 1925, against the lessee for a construction of leases and a declaration of their rights and liabilities thereunder. The lessee joined issue on certain allegations of the petition, asked a cancellation of the leases, and asserted a counterclaim for (1) minimum royalties, (2) damages for failure to get possession of the premises, (3) $3,000, the amount of insurance collected by the lessee on the commissary building, which was destroyed by fire. On final hearing the court canceled the leases, gave the lessee 90 days within which to remove its property from the mines, and dismissed the counterclaim. The lessors appeal.

Appellants insist that the court erred in rejecting their counterclaim for minimum royalties during the time that appellee retained possession of the leased premises and used them for hauling coal from adjoining land. On the other hand, appellee contends that, when the coal was exhausted the right of the lessors to minimum royalties ceased, and was not affected by the fact that appellee retained possession under the supplemental contract of

1920. In support of this position appellee relies on Auxier Coal Co. v. Big Sandy & M. C. Coal Co., 194 Ky. 14, 238 S. W. 189, and argues that the supplemental contract related to a new and independent subject-matter, and conferred an additional right separate and distinct from the original lease. It is true that it was held in the case of Auxier Coal Co. v. Big Sandy & M. C. Coal Co., supra, that, under a mining lease like the one in question, the exhaustion of the coal terminated the lease and avoided the further payment of minimum royalties, but in that case the court did not have before it the liability of the lessee in case he retained possession of the premises for some purpose under the lease. The rule on the subject seems to be that, even where the coal is exhausted, the lessee is not released from liability for the fixed rental or royalty based on minimum production if he retains possession of the premises for some purpose under the lease (40 C. J. 1035; Virginia Iron, etc., Co. v. Graham, 124 Va. 692, 98 S. E. 659; New York Coal Co. v. New Pittsburg Coal Co., 86 Ohio St. 140, 99 N. E. 198), although the purpose for which it is retained is not a mining purpose (Lennox v. Vandalia Coal Co., 158 Mo. 473, 59 S. W. 242).

In the last-mentioned case the question was very similar to the one here involved. There the lease required the lessee to mine coal at a stated royalty, and provided for a minimum production and a minimum rental on that basis. It further provided that the term should end when the workable coal was exhausted, but gave the lessee the right to use the shaft on the demised premises for the purpose of hoisting coal mined from other lands. After the exhaustion of the coal the lessee remained in possession of the premises and continued to use the shaft for hoisting coal from other lands. It was held that the lessee could not escape the payment of the minimum rental on the ground of exhaustion of the coal so long as he retained possession of the demised premises for any purpose under the lease, including the hoisting of coal from other lands. It must not be overlooked that in that case the right to hoist coal from adjoining lands was given in the original lease, and the only consideration therefor was the mimimum royalty, while in this case the new right was conferred by supplemental contract and there was an additional charge therefor. In view of the additional charge for the additional privilege we hardly think it fair to make the minimum roy-

alty the basis of recovery during the time that the lessee used the premises for hauling coal from adjoining lands. However, it was never contemplated that the right to haul coal from other lands should continue after the original lease terminated. That right was not separate from or independent of the original lease. On the contrary, it was an inseparable incident of that lease and was to continue only "during the life of this lease or any renewal thereof." Though the original lease was to last for 25 years, and by the supplemental contract the time was extended to 30 years, the right to mine coal from adjoining lands did not continue for that length of time unless the original lease was still in force. Notwithstanding the period fixed in the contract the exhaustion of the coal terminated the lease from and after the notice of January 8, 1925. Its life was then ended, and with it the right to haul coal from adjoining land. Nothwithstanding this fact appellee thereafter retained possession, not only of the commissary and other buildings, but of the mine itself for the purpose of transporting coal from the adjoining property. In the circumstances we conclude that appellee should pay something more than one cent per ton on the coal so hauled, and the additional compensation should be the fair and reasonable value of the use and occupation of the leased premises during the time that appellee after January 8, 1925, continued to haul coal from adjoining lands through the premises.

Moreover, it must not be overlooked that, though the lease was terminable on notice for unavoidable accidents or casualties preventing the lessees from mining, the lease distinctly provided that there should be no abatement of royalties, unless prompt written notice was given. As the last payment of royalties was made in October, 1924, and the written notice was not given until January 8, 1925, appellant is also entitled to recover the minimum royalties accruing between those two dates. On a return of the case the court will hear evidence on the value of the use and occupation of the leased premises for the time above indicated, and render judgment in favor of appellants for that amount, together with the unpaid minimum royalties up to January 8, 1925.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.

Whole court sitting.