## Gambill's Administrator v. Gambill et al.

(Decided December 12, 1930.)

HENRY L. SPENCER for appellants.

A. F. BYRD for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

A paper, probated by the county court of Breathitt county as the will of William E. Gambill, upon appeal to the circuit court, was found by a jury not to be his will, and from a judgment entered upon that verdict the propounders have appealed.

This table will show the names of those who would have taken the old man's property if he had died intestate, and their relation to him and to each other, and what each would have taken:

| | | |
|---|---|---|
| | Dr. E. L. Gambill | 1/7 |
| | A. L. Gambill | 1/7 |
| | George W. Gambill | 1/7 |
| Wm. E. Gambill | Elvira Rose | 1/7 |
| died Dec. 1st. | Lizzie Strong | 1/7 |
| 1927. | Charley Gambill | 1/7 |
| | Wm. B. Gambill (died in 1900) | |
| | Alfred Gambill | 1/7 |

The paper offered as his will is dated February 20, 1926, it is a well-written instrument, and the only changes it makes from the disposition the law would have made of the testator's property if he had made no will are these:

Two of the testator's sons had been unfortunate in business; he was on their notes, and, to protect his estate and the families of these two sons, he made provision in his will as follows:

"I hereby give and bequeath to Mary E. Gambill the wife of Alfred Gambill, my son, all the property both real and personal that my son Alfred would have inherited if I had died intestate.

"I hereby give and bequeath to Clara Gambill the wife of my son George Gambill all the property both real and personal that my son George Gambill would have inherited if I had died intestate.

"I hereby give and bequeath to my sons George Gambill and Alfred Gambill each one Dollar.

"Provided further herein that my personal representative after my death is directed in the event that he is required to pay any money for the said George Gambill or the said Alfred Gambill on account of my having been surety for either of them on any note, then in that case to deduct such amounts from the share of the estate given herein to either of their wives."

Charley Gambill had not been thrifty, and to protect him the testator placed his share in the hands of E. L. Gambill by a carefully prepared trust clause.

Aside from these changes, the testator's estate will pass just as though he had died intestate. In fact, the will describes the shares devised as what would pass if he had died intestate. Young Alfred Gambill contends this will does him an injustice by making him account for an advancement of $2,500 the testator made him, but, if he will read section 1407 and section 4840 of the Statutes, he will see he would have to do that any way, so he is not hurt, and will come out at the same place will or no will. A will so carefully thought out, that protects the estate, that provides for the protection of whatever is going to the testator's two sons who had met with business reverses, that protects his spendthrift son, and works such even-handed justice to all, ought not to be set aside except for most cogent reasons. The first five children

as named above are satisfied, and are asking for the probate of the will. Charley is contesting. Young Alfred, who will fare the same, will or no will, probably having never heard of section 1407 and section 4840, Ky. Stats., thinking he could get $2,500 advantage over the others, joined in the contest.

The propounders of the will introduced the attesting witnesses whose testimony showed the due execution of the will, that the testator then knew and understood what he was doing and had testamentary capacity. Another witness who testified in favor of the testamentary capacity was next called, probably for the convenience of the witness, and the propounders rested for the time. A number of witnesses for the contestants were called, and at the conclusion of their evidence the propounders moved for a peremptory instruction to find the paper in contest to be the will of Wm. E. Gambill. This motion was improperly overruled, that ruling was made a ground for a new trial, that motion was improperly overruled, and that is relied on for reversal. As we have reached the conclusion the peremptory instruction should have been given. we shall state briefly the evidence.

The testator was shown to have been about eighty years old when he made his will and about eighty-two when he died. In spite of his limited educational advantages and start in life, he had been a rather thrifty man, and was above the average in intelligence. As he was referred to as Squire Gambill, it is inferable that he was at one time a member of the fiscal court. He was postmaster for more than twenty years, he was a business man, he was a member of the Gambill Coal Company, and engaged in the operation of a coal mine from 1916 or 1917 to about 1922, was smart enough to sell out for a good price before the high tide of that business had subsided, and he had a large farm which he successfully conducted. He appears from the evidence to have been a sturdy, jovial, firm, old patriarch who had the respect and esteem of his community. The testator had enjoyed rather robust health until after his wife died, which was about 1924. After that he began to suffer from hyperacidity of his urine, and perhaps high-blood pressure. In April, 1925, he had a slight stroke of paralysis that put him in bed for a while, but he partially recovered, and was able to go about afoot and on horseback and look after his farm and his business, but he was not so phys-

ically vigorous as before. He came to Jackson in the early part of the first week of January, 1926, to look after some litigation in which he was interested. Shortly after he got there he had an attack of hyperacidity of his urine, he was in bed and unconscious for several days, but his condition responded to treatment, and he soon recovered. On the 20th of February he made his will, and on March 25th he gave his deposition in the litigation in which he was interested; that deposition is a part of this record, and it was before us and considered by this court in the case of Gambill v. Ellser Coal Co., 230 Ky. 553, 20 S. W. (2d) 286. This is a sensible, well-connected deposition. The testator returned to his home in the early part of April, 1926; he looked after and managed his business until April, 1927, when he placed all his business in the hands of Dr. E. L. Gambill. In November, 1927, the testator suffered another stroke of paralysis, and on December 1st he died.

To sustain the action of the court and the verdict of the jury, the contestants rely upon the following:

They urge that he was old, which is true, but age alone does not imply incapacity. Galileo, the astronomer, Bancroft, the historian, Goethe, the poet, Lamark, the naturalist, Verdi, the musical composer, and Spencer, the philosopher, produced their masterpieces when in their later seventies and early eighties. Titian painted one of his greatest pictures when he was ninety-eight; Hindenburg, the warrior and statesman, is now president of the German empire at eighty-three; Clemenceau was writing his memoirs when he was eighty-six; Justice Holmes is giving active and distinguished service on this nation's Supreme Court at ninety; and Thomas A. Edison, now past eighty-three, is producing original scientific work.

It was shown by several that the testator, after he came home from Jackson, when asked about it, denied having made a will, which was perhaps a diplomatic way of saying, "That is none of your business." He had reason to deny it, for he had had a will, similar to this one, written some years before, which some one got hold of and burned. It was shown by one witness that he bought some meat from the testator, and, after he had weighed the meat, he started to figure up the amount to which it came and threw down the pencil and had his grandniece make the calculation. This witness continued to buy meat from him, but always after that the testator

had his grandniece make the calculations. By another witness it was shown the testator sent two sets of men to do the same piece of work, but there was no showing the first set of men had done the work or were attempting to do so. It was shown by a number of men that after the death of his wife the testator would spruce up, put on a collar and tie, and say he was going to see his girl; that there were three or four young women in the neighborhood in whom he was interested; that he would speak of expecting to marry this one or having married that one; and that to one girl in particular he frequently referred as "My young wife." Whether this was said seriously or was only a manifestation of the old man's jovial disposition does not appear. Frequently old men make such remarks, but of itself that is not an evidence of mental unsoundness; it is rather to be expected. When the charms of Abishag failed to arouse any interest upon the part of King David, they anointed Solomon as his successor and turned over the kingdom to his rule.

With but few exceptions, all of the witnesses by whom the contestants established these things were shown to be living on the testator's property, or trading and contracting with him; none of them said they saw him about the time the will was written, or within thirty days before or thirty days after it was written. The contestants introduced Dr. Bach, who treated the testator through this attack of hyperacidity in January, 1926, and he was asked if the testator had mental capacity to know his estate, etc., and he said: "For four or five days he would not have had, and after that I do not remember seeing him but once or twice, and he was mentally normal at the time so far as I could see." We shall quote one question and answer from the doctor's testimony.

> "Q. Can you say that at any time he was down there last time you treated him that his mind was as good as it was before you had ever treated him? A. I think it was, I didn't see any difference in his mental capacity after he would get over these attacks of uremic poison."

Upon the showing made, the court should have directed the jury to find the paper in controversy to be the will of William E. Gambill.

The judgment is reversed.