## Elkhorn Coal Corporation v. By-Products Coal Company et al.

(Decided January 27, 1931.)

ED. C. O'REAR, ALLEN PREWITT, J. W. HOWARD and W. P. MAYO for appellant.

B. F. COMBS for appellees.

OPINION OF THE COURT BY JUDGE WILLIS—Reversing.

This case involves the interpretation of a coal mining lease. The lessor complains of a judgment in favor of the lessee. The particular controversy concerns the right of the tenant to have credited against the "minimum royalty" reserved by the lease a payment made in accordance with the contract for "coal lost" by improper mining. The question arises in this way: The Elkhorn Coal Company sued the By-Products Coal Company, J. P. Burton, and Cadwalader Jones to recover a balance of $2,088.64 claimed as minimum royalty for a year ending April 30, 1926. It was admitted that only $28,-196.36 had been paid as royalty upon coal actually mined for the period, but the answer alleged that defendants in addition had paid the sum of $2,500.44 for coal lost, and the aggregate of the two payments in that year exceeded the minimum royalty of $30,285 called for by the contract. A demurrer to the answer was overruled, the plaintiff stood thereon, and the action was dismissed. Hence, the appeal by it.

The lease was given by the Elkhorn Coal Company to the defendants Burton and Jones, and they had assigned it to the defendant company. The consent of the lessor to the assignment was conditioned on the assignors remaining liable to it on the covenants of the lease.

The lease covered 3,024 acres of coal land located in Floyd county, Ky., and continued in force until all the minable and merchantable coal therein was exhausted.

The covenants of the lessee respecting the payments to be made under the lease were:

"To pay the 'lessor,' its successor or assigns, during the continuance of this lease, as rental for said coal and mining rights and privileges, subject to the provisions hereinafter contained with reference to coal used upon the premises by 'lessees' a royalty of Fifteen (15c) cents for each and every ton of two thousand pounds of mine run for all coal mined upon, or used upon, or shipped from said tracts or parcels of land, and that during the year, beginning May 1, 1924, and ending May 1, 1925, they will pay to 'lessor' a minimum royalty of Fifteen Thousand One Hundred Forty-two Dollars and fifty cents ($15,142.50) and during the year beginning May 1, 1925, and ending May 1, 1926, they will pay

to 'lessor' a minimum royalty of Thirty Thousand Two Hundred Eighty-Five Dollars ($30,285.00) and for each succeeding year thereafter during the continuance of this lease they will pay to 'lessor' a minimum royalty of Thirty Thousand, Two Hundred and Eighty-five ($30,285.00) Dollars, even if the quantity of coal mined in said years respectively, at the royalty aforesaid, shall not produce that amount of rental or royalty. Said minimum royalty or rental is to be paid semi-annually not later than the 25th day of November and May of each year, provided, further that if the said 'lessees' their successors or assigns, fail in any year after May to mine a sufficient quantity of coal to pay the aforesaid minimum rental, then they shall and do have the right in any succeeding year during the life of this lease, and after the minimum for said succeeding year shall have been mined and paid for to mine and remove sufficient coal free of rental or royalty to reimburse themselves for the rental in such preceeding year or years, but no credit shall be carried forward to any subsequent year for coal mined in excess of the minimum paid.

"On the 25th day of the month succeeding the end of each fiscal year as hereinbefore declared to be beginning May 1, and ending May 1, of the succeeding year there shall be a readjustment of all payments made for and on account of such year, to the end that the total of such payments shall never exceed the amount of royalty produced by the coal actually mined and shipped during each year, when the amount of royalty so produced equals or exceeds the minimum annual rental hereinbefore provided for. For the purpose of this paragraph the year shall be treated as beginning May. 1.

" 'Lessees' covenant and agree to save the 'lessor' harmless from any and all loss of coal mined and stocked, upon but not shipped from the premises; and should coal so stocked be lost or destroyed, or so injured as to prevent its being marketed or shipped from the premises the royalty in this lease provided shall thereupon become due and payable at the first monthly payment occurring after such loss or damage.

"After all of the said minable and merchantable coal shall have been paid for by the said 'les-

sees' either in the form of royalty or minimum rental, as hereinbefore provided, the said 'lessees' shall and do have the right to mine, excavate and remove the coal so paid for, but not mined and removed, without being required to make any further payments on account thereof. Provided, however, that after all the said minable and merchantable coal shall have been paid for by the 'lessees' as hereinbefore provided, they shall continue to prosecute their mining operations in such manner, and with such dispatch as to mine, excavate and remove the coal so paid for but not heretofore mined or removed within such reasonable time as the railroad facilities and market and labor conditions will permit. And in case the said 'lessees' their successors or assigns shall elect to cease operations for any period after all the said minable and merchantable coal shall have been paid for as provided, they shall, during such period, pay to the said 'lessor' its successors or assigns, as a rental for the said mining rights and privileges at the rate of $2.00 per acre per year for each acre overlying minable and merchantable coal remaining unmined, said payment to be made monthly as hereinafter provided during such time as the said 'lessees' their successors or assigns shall have ceased to so mine and operate the premises.''

(Provisions as to monthly payment of accrued royalties omitted.)

''The 'lessees' on or before the 15th day of each calendar month shall furnish to the 'lessor' its agents, or attorneys, a report showing the quantity of coal taken from the said tracts or parcels of land during the preceding calendar month using the weights furnished by the railroad company over whose railroad the coal is shipped at its first weighing point, for all coal so taken and shipped by rail, said report to show date loading of each railroad car, railroad car initials, numbers and weights; and, if any coal shall be taken, and not shipped by rail, the quantity thereof shall be ascertained in a manner satisfactory to the engineers of the 'lessor'. The 'lessees' shall also comply with any further reasonable rules and regulations that may be prescribed by the engineer of the 'lessor' for the cor-

rect ascertainment and report of the quantity of coal mined hereunder. . . .

"That if at any time the 'lessees' shall not conduct their mining operations according to the general plans provided for under Article 7 hereof, or according to plans approved by arbitration, or according to modern and efficient methods of mining, and *loss of coal* shall thereby result, then 'lessees' shall pay 'lessor' for *coal so lost at the rate of royalty* hereinbefore provided."

"In case of 'lessees'' failure to conduct their operations as aforesaid, the engineer of the 'lessor' may give to 'lessees' notice in writing stating wherein and in what particular 'lessees' are not complying with the requirements of this paragraph. 'Lessees' shall have ten days after said notice within which to remedy, or diligently prosecute the work of remedying the default or conditions complained of, and in case of their failure to so do, 'lessor' may submit the matter to arbitration as hereinafter provided."

(Section 14 of the lease referred to "royalties, rentals and other payments.")

No other provisions of the lease are necessary to be noticed.

It will be observed that the lease obligates the lessee to make three distinct payments for three separate things: First, to pay while the lease lasts a royalty of 15 cents per ton for each and every ton of 2,000 pounds of coal mined, used, or shipped; second, to pay a "minimum" royalty of $15,142.50 during the first period specified $30,285 during the next period ending May 1, 1926, and thereafter an annual minimum royalty of $30,285 for the duration of the lease, whether or not any coal is mined; and, third, to pay for "coal lost," as defined in the lease, at the rate of royalty provided by the contract.

The minimum royalty is a primary obligation of the lease, designed to serve as rental for holding the lands for the purposes of the lease, whether or not any coal should be actually mined. Koppers Co. v. Asher Coal Min. Co., 226 Ky. 492, 11 S. W. (2d) 114; Gambill's Adm'r v. Ellser Coal Co., 230 Ky. 553, 20 S. W. (2d) 286; Saylor v. Howard, 229 Ky. 826, 18 S. W. (2d) 279; Continental Fuel Co. v. Haden, 182 Ky. 8, 206 S. W. 8;

Blue Ridge Coal Co. v. Hurst, 196 Ky. 432, 244 S. W. 892.

No credit against the minimum royalty may be made, except as authorized by and in accordance with the lease. Cf. Elkhorn Star Coal Co. v. Hall, 222 Ky. 345, 300 S. W. 864. The lease does authorize one credit by the provision "that if said lessees, their successors or assigns, fail in any year after May to *mine* a sufficient quantity of coal to pay the aforesaid· *minimum rental,* then they shall and do have the right in *any succeeding year,* during the life of this lease, and· *after the minimum for said succeeding year shall have been mined and paid for, to mine and remove sufficient coal free of rental or royalty* to reimburse themselves for the rental in such preceding year or years, but no credit shall be carried to any subsequent year for coal mined in excess of the minimum paid." The right to a credit is conditioned upon a failure in any year "to mine a sufficient quantity of coal" to pay the minimum royalty, and is limited to mining and removing in a subsequent year sufficient coal free of rental or royalty to reimburse the lessee for the deficiency in the preceding year, or years.

It does not entitle the lessee to credit for damages paid by reason of coal lost by its fault, or for credit in any other manner than that specified. The lessee is entitled to have credit against the minimum royalty only for the amount paid for coal "mined and removed" when the conditions of that right are fulfilled. This interpretation of the lease is emphasized by the provision for a readjustment of all payments made for any particular year," to the end that the total of such payments shall never exceed the amount or royalty *produced by the coal actually mined* and shipped during each year, when the amount of royalty so produced equals or exceeds the minimum annual rental" theretofore provided for by the lease.

The minimum royalty is really a yearly rental for the leasehold. It must be paid at all hazards, if the lease is kept alive. When it is paid, the lessee may mine that year free of royalty until that payment is exhausted. It pays the royalty for 201,900 tons of coal, if taken in time. If that quantity is not mined in one year, it may be made up in a later year, but only after the payment of the minimum royalty for the later year. But the lessee is not authorized to damage or destroy any coal, or

to have any credit for payments thereby incurred. If it does lose coal, as defined by the lease, it must pay the royalty value thereof as damages, but it is nowhere to be given any credit or advantage because of it. Such payment is necessarily a total loss to the lessee. It is meant to be such as a deterrent against bad mining and not solely to provide compensation to the lessor. The public policy of the state is subserved in enforcing provisions to discourage the destruction or waste of a natural resource.. (Cf. Ky. Stats., c. 88.)

It was not merely the purpose of the lease to realize the sum of 15 cents per ton to the lessor for all of its coal. Cf. Koppers Co. v. Asher Co., 226 Ky. 492, 11 S. W. (2d) 114. That construction would nullify some of the terms of the lease. The lessor expected and exacted careful and efficient mining and had a right to impose terms tending to achieve that object. The omission to provide for credit against the minimum royalties of any damages paid for lost coal was not accidental. Nor does the lessor get paid twice for the same thing. The damages specified pays only the royalty value for coal lost. The minimum royalty pays for holding the entire premises under the lease. Koppers Co. v. Asher Coal Min. Co., 226 Ky. 492, 11 S. W. (2d) 114.

It is a mistaken assumption that lessor must be satisfied if the aggregate of the payments for all purposes amount to 15 cents per ton for all its coal, unless that result is accomplished by operations under the lease. Such is not the terms of the contract, and the lessor had a right to contract as to the consequences of the destruction or loss of its coal. It may have feared the effects of careless or bad mining on other coal lands not in the present lease; but, whatever the motive, it is plain that the provision specifying certain items that may be credited against the minimum royalty excludes any other items from being so applied.

The provision to the effect that after all the minable coal shall have been paid for in the form of royalty or minimum rentals, as provided in earlier parts of the lease, then the lessees could mine the coal so paid for, but not mined, meanwhile paying an acreage rental, does not indicate that payments for coal lost or damaged could be credited against the minimum amount to be paid annually. That provision required that all the minable coal

be paid for as "hereinbefore provided," which referred to the royalties, and the provision as to payment of damages for coal lost appeared in a subsequent paragraph of the lease. Moreover, the permission is only to mine, excavate, and remove the coal so paid for, "but not mined and removed," and coal lost by bad mining is not capable of being mined and removed. The reference to coal lost, as contained in the lease, is:

"That if at any time the 'lessees' shall not conduct their mining operations according to the general plans provided for under Article 7 hereof, or according to plans approved by arbitration, or according to modern and effcient methods of mining, and loss of coal shall thereby result, then 'lessees' shall pay 'lessor' for coal so lost at the rate of royalty hereinbefore provided."

It is asked by appellee: "If by some kind of explosion or accidental fire in the mine caused by appellees' negligence the remainder of the coal covered by the lease were all destroyed or burned out in a certain year, could appellant after it had been paid the 15c per ton on all such coal so destroyed demand in addition thereto the entire minimum royalty for that year?" The payment for coal lost would not affect that matter. It would be determined by other factors. The exhaustion of the minable coal would terminate the right to the minimum royalty. Auxier Coal Company v. Big Sandy & M. C. Coal Company, 194 Ky. 14, 238 S. W. 189; Barney v. Sword, 226 Ky. 728, 11 S. W. (2d) 920. But, nevertheless, if the lessee kept the possession of the premises for any of the purposes of the lease, even though not a mining purpose, the liability to pay the minimum royalty would persist. Gambill's Adm'r et al. v. Ellser Coal Company, 230 Ky. 553, 20 S. W. (2d) 286.

It is true, as contended by the appellees, that they are not required by the lease to mine any coal, but only to pay the minimum royalty. The sole purpose of this action is to enforce payment of a balance of the minimum royalty, and it is no defense to such action that the appellees had paid more than the amount of that balance for coal lost in consequence of their fault in operating the mines. The lease requires payment of the minimum royalty, and for coal lost, too, and the payment of one does not alter or affect the obligation to pay the other.

Such being our construction of the contract, it follows that the demurrer to the answer should have been sustained.

The judgment is reversed for proceedings consistent with this opinion.

Whole court sitting.