## Koppers Company v. Asher Coal Mining Company.

(Decided November 27, 1928.)

Appeal from Bell Circuit Court.

1.  Contracts.—The ascertainment of the intention of the parties to a contract must be deduced from the contract itself.

2.   Contracts.—The usual test of severability of contract is whether consideration is so segregated that it may be separately applied to each independent covenant in contract.

3.   Contracts.—Contract must be construed from standpoint of parties, and terms employed must be given effect from that viewpoint.

4.   Contracts.—In ascertaining intention of parties to a contract, it is necessary to consider not only terms of contract, but object to be attained.

5.   Contracts.—If contract embraces number of distinct subjects which admit of being separately executed or enforced, general rule is that it shall be taken distributively and each subject considered as forming separate agreement.

6.   Mines and Minerals.—Coal mining lease, covering two distinct tracts of coal lands, containing covenants of payment of minimum rental on each tract of land, held to be divisible and to contain severable covenants requiring payment by lessee of minimum rental on each separate tract whether operated or not, and hence payment of royalties from one tract in excess of minimum rentals due from both did not satisfy obligation to pay fixed rental on each tract.

7.   Mines and Minerals.—Where language of coal mining lease was clear and free from ambiguity, there was no occasion to resort to extraneous circumstances for aid in its construction.

HUMPHERY, CRAWFORD & MIDDLETON and SAMPSON & SAMPSON for appellant.

WILLIAM LOW for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

This appeal involves the interpretation of certain covenants in a mining lease held by the Koppers Company on lands of the Asher Coal Mining Company. The lease covers two distinctly described boundaries of coal lands, but is a single contract, with the exception of the covenants respecting rentals and royalties, and the descriptions of the leased lands. All the other covenants and conditions in the contract apply equally to both tracts embraced within the lease.

The controversy came up in this way: The Koppers Company ceased operations on one of the leased tracts and concentrated its energies on the production of coal from the other tract. The arrangement was a temporary one in the interest of economy of production and was doubtless dictated by sound business judgment. As a result of the change, production was increased to such an extent that more coal was mined from one than had

been produced formerly from both mines. The lessor contended that the minimum rental on the unoperated mine should be paid, notwithstanding the fact that the royalties on the coal mined from the other tract exceeded the minimum rentals provided by the lease on both tracts included therein. The contested amount was paid under protest, and this action was filed by the Koppers Company to recover it, and to secure a declaration of the rights of the respective parties. The circuit court dismissed the action, and the Koppers Company appeals.

The lease contains many numbered sections, but the taproot of the present controversy is found in section 7, which is as follows:

"7th. The lessee covenants and agrees to pay the lessor a certain yearly rental of Seven Thousand Five Hundred ($7,500.00) Dollars for the tract of land first herein described and marked tract No. One (1), beginning from the date of this lease and for the said tract No. Two (2), the lessee agrees to pay to the lessor a certain yearly rental as follows: For the first year beginning the first day of April, 1914, and ending on the 31st day of March, 1915, Four Thousand ($4,000.00) Dollars. For the second year beginning on the said first day of April, 1915, and ending on the 31st day of March, 1916, Six Thousand ($6,000.00) Dollars, and for the third year and each and every year thereafter, Seven Thousand Five Hundred ($7,500.00) Dollars. Said rent is to be paid in quarterly installments at the office of the lessor at Wasioto, Kentucky, on the 15th day of the month succeeding the month in which the quarter ends."

Several other sections of the lease have a bearing on the question presented, and should be understood. Section 8 provided for tonnage royalties on coal, coke, and cannel coal, and that "on the fifteenth day of each calendar month succeeding the quarter in which the coal is mined or the coke made" royalties for the preceding quarter must be paid, "less the amount of quarterly installments of said rent as provided in paragraph No. 7 in this lease."

The tenth paragraph provided for an annual accounting and adjustment of the rentals and royalties by allowing the lessee credit for the difference between the fixed rental paid and the royalties earned, provided that

the credit should not reduce the minimum rental due for any year, and when an excess of royalty over rental paid arose in one year it was to be credited on royalties for the next year, if the royalties exceeded the minimum rental for such year.

Paragraph 11 provided for a measure of relief to the lessee in the event of specified misfortunes, but it was conditioned that nothing therein should relieve the lessee from the payment of the minimum or fixed rental for any year.

Paragraph 13 reads:

"13th. The lessee further covenants and agrees that all rents and royalties herein agreed to be paid shall be deemed and considered *as created for the rent of the land* and shall be a lien on this leasehold and the fixtures and improvements thereon and on the personal property of the lessee and on the coal mined from and coke made on said premises for twelve months after rent and royalties become due, and until the termination of any suit commenced within the time for said rents and royalties, or for damage to the lessor by reason of the breach of any covenants herein."

The forfeiture provision is as follows:

"26th. The lessee further covenants and agrees that should the lessee fail *to pay the rents and royalties, or either of them as provided for,* at the time hereinbefore specified, and shall continue in such default for sixty days thereafter, then this lease shall at the option of the lessor be forfeited and become null and void, and all rights and privileges of the lessee thereunder shall cease and terminate, and the lessor or the agents and assigns of the lessor may thereupon enter upon and take possession of said premises with the appurtenances in the same manner and to as full an extent as said lessor might or could do at the expiration of the full terms of this lease as herein provided without further notice or demand upon the lessee or the intention of the lessor to terminate this lease."

The question sharply presented is whether the payment of tonnage royalties in one year in excess of $15,000 on coal mined from tract No. 1 excuses the payment of

the minimum rentals for such year on tract No. 2. The solution of the problem requires a determination of the character of the contract as to severability of the covenants. If the payment of the minimum amounts required by the contract would satisfy its covenants, regardless of the source or occasion of such payments, the contract must be regarded as entire and indivisible. On the other hand, if the contract is not entire, the consideration must be apportioned to each separate tract of land covered by the lease, and must be performed as to every part of the subject-matter of the contract. It involves the ascertainment of the intention of the parties, which must be deduced from the contract itself. 6 R. C. L. sec. 246, p. 858; 13 C. J. sec. 526, p. 562; Gilmore, etc., v. Samuels, etc., 135 Ky. 706, 123 S. W. 271, 21 Ann. Cas. 611; O'Bryan v. Mengel Co., 224 Ky. 284, 6 S.W. (2d) 249; Bank of Antigo v. Union Trust Co., 149 Ill. 343, 36 N. E. 1029, 23 L. R. A. 611.

The usual test of severability is whether the consideration is so segregated that it may be separately applied to each independent covenant in the contract. Contracts must be construed from the standpoint of the parties, and the terms employed must be given effect from that viewpoint.

It was the plain purpose of the parties in making the present contract to fix a minimum income of $7,500 per annum from each separate tract of land. Sections 7 and 13 of the lease expressly define such payments as a "rent for the land." If the lessor had made two separate and distinct leases on the form here involved to two independent individuals and one of the leases had yielded a royalty in excess of $15,000 in one year, it would not have satisfied the obligation of the other to pay the minimum rental due from his leased lands, if he failed to do so. The fact that the two leaseholds were held by one owner could not alter the character of the contract. In ascertaining the intention of the parties it is necessary to consider not only the terms of the contract, but the object to be attained. 13 C. J. secs. 526, 538 and 539; Gilmore v. Samuels, 135 Ky. 706, 123 S. W. 271, 21 Ann. Cas. 611.

The apparent object was to obtain a rental upon each tract of land and not a gross sum which might as well be realized from one tract. It is true the forfeiture clause of the contract expressly provided that failure to

pay the rent and royalties, or either of them, as required, furnished a ground of forfeiture of the entire lease and all rights and privileges conferred by it. But this fact is not conclusive of the character of the contract as a whole. If the agreement embraces a number of distinct subjects which admit of being separately executed or enforced, the general rule is that it shall be taken distributively, and each subject considered as forming a separate agreement. 6 R. C. L. sec. 246, p. 859.

It is not necessary to decide the extent of forfeiture that might be involved in a failure to pay the rental on one tract, where there was no default as to the other, since there has been no attempt to forfeit and that subject is not now before us. But it is obvious that the forfeiture provision itself might be entire in the sense that a violation of a single separate covenant authorized the termination of the whole lease, without rendering indivisible the distinct covenants for the payment of a rental upon each parcel of land held under the contract. By the terms of the present lease it appears that the minimum rental was the consideration of holding the lands for coal mining purposes whether or not any coal was actually mined. If coal was mined, royalties would be due thereon in addition to the minimum rental on the land from which the coal came; but no provision of the lease excuses payment of the ground rental. Royalties are affected by the minimum rentals, but the rentals are not affected by the royalties. The lessee could not hold one of the tracts of land without any payment simply because it was paying an amount based on production from the other tract in excess of the minimum on both tracts. It is quite clear, from a consideration of the language employed in the instrument, that the minimum rental was absolutely to be paid on each tract of land leased regardless of royalties. The subject-matter of the contract was divisible, and was actually divided, and there is nothing to indicate an intention to make it entire. Cf. Dorsey v. Clarke, 223 Ky. 622, 4 S.W.(2d) 748.

It is argued for the appellee that the course of conduct with the predecessors of the appellant established its construction of the contract. The appellant answers that it is not bound by that construction, as it was a matter dehors the document assigned to it, and it had no notice or knowledge of such construction or course of conduct. It is not material to consider either of these

questions, since we have come to the conclusion that the language of the lease is clear and free from ambiguity. In such cases there is no occasion to resort to extraneous circumstances for aid.

The circuit court correctly held that the lessee was liable to the lessor for the minimum rental on each separate tract of land, whether operated or not, and that payment of royalties from one in excess of the minimum rentals due from both mines did not satisfy the obligation imposed by the lease to pay a fixed rental on each tract of land covered by the lease.

The judgment is affirmed.