## Steiden Stores, Inc., v. City of Louisville et al.

January 14, 1947.

638

Selligman & Greenebaum for appellant.

Doolan, Helm, Stites & Wood, Gilbert Burnett, and Alex P. Humphrey for appellees.

OPINION OF THE COURT BY JUDGE SILER—Affirming in part, reversing in part.

The City of Louisville, appellee, sought to collect city taxes which had been assessed for the years of 1943, 1944 and 1945 against a building on land leased for a term of 20 years to Steiden Stores, appellant corporation, by Children's Free Hospital, appellee institution.

The chancellor's judgment, rendered on the pleadings of the case, interpreted this lease as an instrument which invests, for practical tax purposes, the full ownership of the subject building in the appellant, a tax paying mercantile organization, rather than in the appellee hospital, a tax exempt charitable institution.

This appeal from the chancellor's judgment now presents for our decision only one question, viz., whether the appellant owns, for tax purposes, its occupied store building standing upon its 20 year lease. Steiden Stores, Inc., asserts it does not own this building. City of Louisville asserts the contrary, that is to say it asserts that Steiden Stores, Inc., owns, for practical tax purposes, the building in question. The chancellor's judgment sustains the city's contention.

The tenure of this lease is from April 1, 1936, until December 31, 1956. The lease encompasses a valuable lot with a 40 foot frontage on 4th Street and also a high type store building located thereon, the building having, prior to April 1, 1936, and prior to any conveyance of the property to appellee hospital, been erected on this

lot by Steiden Stores at a cost of about $20,000. The lot, which is owned by appellee charitable institution and which lot the city does not now contend is subject to taxation, is said to have an assessed valuation of $137,600, while the building itself has an assessed valuation of $20,000, the same amount as its original cost.

Our examination of this lease discloses that it provides, inter alia, that this appellant shall, in the event of a loss of the property through condemnation proceedings, be paid, out of the resulting condemnation award, the following sums for the following years:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| $20,000 | if | possession | is | lost | by | Steiden during | 1936 |
| $19,167 | " | " | " | " | " | " | 1937 |
| $18,334 | " | " | " | " | " | " | 1938 |
| $17,500 | " | " | " | " | " | " | 1939 |
| $16,500 | " | " | " | " | " | " | 1940 |
| $15,000 | " | " | " | " | " | " | 1941 |
| $13,500 | " | " | " | " | " | " | 1942 |
| $12,000 | " | " | " | " | " | " | 1943 |
| $10,500 | " | " | " | " | " | " | 1944 |
| $ 9,000 | " | " | " | " | " | " | 1945 |
| $ 7,500 | " | " | " | " | " | " | 1946 |
| $ 6,000 | " | " | " | " | " | " | 1947 |
| $ 4,500 | " | " | " | " | " | " | 1948 |
| $ 3,000 | " | " | " | " | " | " | 1949 |
| $ 1,500 | " | " | " | " | " | " | 1950 |

The lease further provides that the appellant. shall have no part of any such condemnation award if it loses, through condemnation proceedings, possession of the property after the year 1950. The lease also provides that the building in question must always be insured to the extent of $20,000 against certain risks of destruction; that the insurance premiums must be paid by appellant; that any payable insurance must be paid to appellee hospital, but the latter must thereupon make the collected funds available to appellant for the immediate restoration of· the building following its damage or destruction. The lease still further provides that appellee hospital may, at its own election, after January 1, 1940, cancel the lease, provided that the appellee hospital shall, at any time after that date, have a valid opportunity to sell the property; that this appellant shall, in the event of a loss of the property through such cancellation by sale, be compensated during the years from 1940 through

1950 on those same bases as the ones set out in the deprivation schedule copied above; that the appellant shall have no deprivation compensation if it loses, through cancellation by sale, possession of the property after the year 1950. The lease places all expense of maintenance and repairs upon appellant during the tenure. The appellant has, under terms of the lease, the full right to assign or to sublet this property throughout the tenure without appellee hospital's consent. The lease specifies that the improvements shall become the property of appellee hospital upon the lease's termination by lapse of time or by other means; that the appellee hospital shall have a lien on appellant's interest under the lease as security for fulfillment of the lease's obligations; that the appellant and the appellee hospital shall jointly and equally share the expense of any construction, such as sidewalks or sewers, which may be required by governmental authority at any time prior to January 1, 1952; that appellant may further improve or alter this leased store building only with the written consent of appellee hospital. These recited provisions present what we believe to be all of the evidential elements of this lease which may be calculated to shed any light upon the question of the practical ownership of this building as of July 1, 1942, July 1, 1943, and July 1, 1944, the tax assessment dates in controversy.

We have recently held that although a tax exempt institution may own the underlying land of leased premises, yet such institution need not necessarily own, for practical tax purposes, the buildings which were erected on such land by the lessee at the beginning of the 99 year tenure of the lease. See the case of Broadway & Fourth Avenue Realty Co. v. City of Louisville, 303 Ky. 202, 197 S. W. 2d 238. In the latter case, as above indicated, the buildings were erected by the lessee after the execution of the lease. And, also as above indicated, the tenure of that particular lease was 99 years. Furthermore, in that case, the lease provided that the lessee should, in the event of a loss of the property through condemnation proceedings, be paid, out of the resulting condemnation award, such full amount of the compensation award as might represent the entire value of the condemned buildings regardless of the year of the condemnation. With those provisions implanted in the

Broadway & Fourth Avenue Realty Company lease, we interpreted it as one which indicated, in its broad spirit, that the buildings of that lease were within the practical ownership of the lessee for tax purposes. Ample justification for that interpretation appeared to us to lie in the longevity of its 99 year tenure as well as in all the veiled verities hidden away within the general scope and purport of that instrument.

The lease of the present case does not readily lend itself to an interpretation identical with the interpretation of the Broadway & Fourth Avenue Realty Company lease. Our lease now under consideration is a 20 year contract instead of a 99 year contract. The building of our present lease was erected before the lease itself was executed, rather than subsequently thereto. The condemnation provision of our present lease indicates that any compensation that may be thereby awarded for the loss of this building shall, after 1936, be paid to the lessee in partial and varying amounts, which amounts shall diminish with the diminishing tenure of the lease, this provision being in lieu of the requirement of the Broadway & Fourth Avenue Realty Company lease that the entire buildings' condemnation award should be paid over to the lessee during any and all years of the lease's tenure.

And so as we look upon the general spirit and purpose of appellant's 20 year lease, which is under present consideration and upon which lease the $20,000 controversial building was already standing at the lease's inception, we now interpret it as such a contract as recognized appellant's particular ownership in this building to the exact extent which was expressed in the deprivation schedule copied above. That is to say, we are now conceiving that there was a definite meeting of the minds of the appellant and of the appellee hospital, under the terms of this lease, which meeting of minds vested $20,000 worth of property ownership in this building (its entire original cost) in the appellant in the year 1936, and also vested $13,500 worth of the same in appellant on July 1, 1942, and also vested $12,000 worth of the same in appellant on July 1, 1943, and also vested $10,500 worth of the same in appellant on July 1, 1944. This was, we believe, the contract of the parties. And such

was the effect and meaning of this lease. These amounts were the exact amounts of store building values which appellant would have received if Jefferson County Court had entered condemnation judgments for the taking of the Steiden Stores Fourth Street establishment for a new county courthouse during the years specified.

We are firmly persuaded that every contract of this kind, that is to say a lease between a tax exempt organization, on the one hand, and a taxpayer, on the other hand, will necessarily have to be construed separately, each one according to its own spirit and purpose as these may be gathered from the four corners of each instrument under consideration. The deprivation schedules of some leases of this particular kind might *not* necessarily furnish accurate indexes as to the true ownership of the improvements on such leases. The true ownership of the building upon some other lease may be better indicated through an entirely different means rather than through the means of a deprivation schedule. Each lease must necessarily be construed individually. As this court has heretofore declared, every contract must be construed in its entirety or as a whole. See Luten Bridge Co. v. Grant County, 206 Ky. 528, 267 S. W. 1082. And contracts must be construed from the standpoint of their own parties. See Koppers Co. v. Asher Coal Mining Co., 226 Ky. 492, 11 S. W. 2d 114. However, there is one fundamental rule of construction which must, we believe, be followed in all cases of this kind. That fundamental rule is that any lease involving the possibility of a tax exemption must be construed so strictly as to defeat such a possibility if this can be done and still leave the court in the position of an interpreter instead of a maker of the contract. In this instant case, we can not become makers of this contract. Yet we, as the contract's interpreters, are construing it as strictly as possible so as to defeat the possibility of tax exemption on this $20,000 store building occupied by this mercantile corporation under its 20 year lease.

Someone has said that "property is at once the consequence and the basis of the state." Now if this Steiden Stores building on Fourth Street in Louisville is indeed the "consequence and basis" of our government, then this building ought to be made to help bear the burden

of that government through taxation, if perchance we find it legally possible to accomplish in some measure a purpose of that kind. Property exists by grace of the law. Therefore, property should pay tribute to the law's machinery, which is its government. This is true because government is, in final analysis, the true author and finisher of the mind, body and soul of that thing we call property. We can conceive of no way for property to eat bread in the sweat of its own face other than by the payment of taxes. There is a *quid pro quo* between government and property just as surely as there is a "something for something" between the individual parties to any contract. And if government gives to property a *quid* through police, fire and other protections, then property shall return to government its *quo* through taxes. Therefore, we are now placing a small part of government's tax burden on the broad shoulders of this valuable building to the fullest extent possible without departing from our primary function, which is that of interpreting, rather than that of making, this contract now before us.

We readily admit that we have been precariously paddling our judicial canoe between Scylla and Charybdis. On the left side lay the hazard of this court attempting to make the contract between these parties. On the right side lay the hazard of this court permitting this valuable, strong-bodied property to "deadhead" its passage all the way from Dan to Beer-sheba in the easy seat of tax exemption, while riding upon the grandest governmental train that ever traveled through the promised land of a well-blessed people. We believe that we have avoided Scylla and that we have evaded Charybdis. But the journey was rough and the escapement was only by narrow margin.

The chancellor appears to have correctly ruled upon the demurrers which were filed against the pleadings of this case. But his judgment went too far, we believe, in adjudging that the full value of this store building was vested in appellant upon the dates in question. The amounts of building ownership which were, for tax purposes, vested in appellant appear to us to have been the following amounts on the following dates, according to the broad spirit and general purpose of this lease:

644

$13,500 on July 1, 1942;
$12,000 on July 1, 1943;
$10,500 on July 1, 1944.

The judgment is affirmed in part and reversed in part, with directions that another judgment be entered conforming to the views expressed in this opinion.