**KENTUCKY TAX COMMISSION, etc., et al., Appellants,**

v.

**JEFFERSON MOTEL, INC., a Kentucky Corporation, Standiford Field, Appellees.**

Court of Appeals of Kentucky.

Feb. 19, 1965.

William S. Riley, Frankfort, Francis Dale Burke, Pikeville, William M. Dishman, Danville, for Kentucky Dept. of Revenue and Kentucky Tax Commission.

Mark Davis, Jr., Asst. County Atty., Louisville, for Judge of Jefferson County Court and the Jefferson County Tax Com.

Lucian L. Johnson, Louisville, for Richard Van Hoose as Supt. of Jefferson County School Dist.

W. C. Fisher, Jr., Louisville, for Chief Finance Officer of City of Louisville.

Henry A. Triplett, Louisville, for Samuel V. Noe as Supt. of Louisville Public Schools.

Earl S. Wilson, Bullitt, Dawson & Tarrant, Louisville for appellees.

PALMORE, Judge.

The Kentucky Tax Commission, Department of Revenue, and various officers of Jefferson County, the City of Louisville, and the school boards of Louisville and Jefferson County appeal from a judgment of the Jefferson Circuit Court invalidating a state and county ad valorem tax assessment for the year 1961 against a leasehold owned by Jefferson Motel, Inc. (hereinafter called Jefferson). Cf. KRS 133.120.

The assessment was held void on constitutional grounds, as discriminatory under fundamental principles announced long ago in the leading case of Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220

(1886). Since we concur in that analysis it is unnecessary to consider the irregular manner in which the assessment originated.[1]

The tangible property on which Jefferson has a lease is the Standiford Motor Hotel, located on and including a 10-acre tract owned by the Louisville & Jefferson County Air Board. Insofar as the Air Board is concerned, it is assumed by the parties that such property is tax exempt under KRS 183.138.

In order to make possible the financing that was required for construction of the motel, Jefferson and the Air Board entered into a contractual arrangement whereby (1) the Air Board conveyed 10 acres of relatively unimproved ground to Jefferson, (2) Jefferson built a 198-unit motel at a cost of $971,922.35 ($850,000 of which was obtained through a mortgage loan), (3) Jefferson conveyed the property back to the Air Board (subject to the mortgage), and (4) the Air Board then leased it to Jefferson for a term of 20 years with three 5-year extension options. Jefferson pays all the loan installments, reimburses the Air Board for all fire and extended coverage insurance premiums, and pays rent at the rate of $6,000 per annum or 10% of the gross revenues from the property, whichever is the greater.[2] Jefferson agrees also to pay the City of Louisville annually an amount equal to current city taxes[3] based on a valuation of $404,620 multiplied by the prevailing ratio of assessed value to fair cash value.

The board of tax supervisors used a figure of $883,825 as the value of the improvements[4] and applied to it the 40% ratio of assessed value to fair cash value which the tax commissioner, Mr. Trager, says is standard in Jefferson County, resulting in an assessment of $353,530 against Jefferson. Jefferson appealed to the Kentucky Tax Commission. After a hearing devoted entirely to an exposition of the arrangements between Jefferson and the Air Board, the cost figures, and the method by which Mr. Trager arrived at his valuation, the Commission entered an order referring to the property under assessment as "the leasehold interest" of Jefferson and reducing the valuation to $181,814.40. There is not a line in the record to suggest what factors, if any, went into the calculation of this figure, nor is there any explanation of the shift in terminology describing the subject matter of the controversy. We are forced to assume, as did the trial court, that the Commission actually intended to evaluate a different property interest, the leasehold, from that which had been assessed in the first place, to-wit, the physical improvements on the land.

It is obvious of course that improvements, which regardless of who made them are nevertheless part of the real estate and are tangible property, constitute a different class of property from the leasehold interest which, being a contract right, theoretically is intangible personal property, often called a "chattel real."[5] Appellants

---

1. Instead of himself making the assessment and serving notice as provided in KRS 132.450(2), the tax commissioner recommended it to the board of tax supervisors, which "increased" a theretofore non-existent assessment from "zero" to $353,530 and notified the taxpayer accordingly.

2. For the year ending February 28, 1961, the rent paid was $55,020.99, which was expected to increase to $60,000 in the following year.

3. Not school taxes, however.

4. The tax commissioner testified that he depends on the cost of reproduction less depreciation method of valuation.

5. Restatement of Property, § 9; American Law of Property, § 3.12 (Vol. 1, p. 205); 32 Am.Jur. 39 (Landlord and Tenant, § 16). Unquestionably, however, a leasehold is an "interest" in the nature of real estate, and we do not necessarily imply that it cannot or should not be so classified for purposes of ad valorem taxation. See Purcell v. City of Lexington, 186 Ky. 381, 216 S.W. 599, 602 (1920).

take the position "that the difference in terminology is immaterial. In numerous cases, courts have measured leasehold interests in land on the basis of the value of improvements placed upon the land" by the lessees. Without reviewing the authorities cited to that effect, we do not question the proposition that if a lessee's addition of improvements is a prudent investment the value of his leasehold interest is enhanced accordingly. And if the benefits and burdens of the lease are otherwise equal, the value of his leasehold should substantially coincide with the current value of what he has added to it. If that were not so, presumably he would not make the investment.[6] Basically, however, the proper criterion of fair cash value for any property, including a leasehold, is the price a seller willing but not forced to sell would take and a buyer willing but not forced to buy would give for it.[7] And that figure may or may not approximate the value of the lessee-added improvements, depending on the circumstances. We therefore cannot say we are dealing with a mere semantic trifle.

In Fayette County Board of Supervisors v. O'Rear, Ky., 275 S.W.2d 577 (1955), it was held that the leasehold and the fee may not ordinarily be separated for ad valorem tax purposes. Cf. KRS 132.-220(3). The underlying reasons for that approach are practical in nature. When the lessor is not tax-exempt he bears the incidence of ad valorem taxes on the entire value of the property as a whole, and he passes it on to the tenant through the rental rate agreed upon between them. Hence, even though the lessee may have the better of the bargain (e. g., if the rent is lower than another lessee would be willing to pay), the taxing authority still collects a tax on the full value of the property. But this is not so when the landlord is tax-exempt, and in such a case we agree that if the non-exempt lessee's contract right has a fair cash value it is taxable. This does not violate the uniformity requirement of Const. § 171. In fact, it is not fundamentally a question of tax classification at all; it is more a mechanical matter of sifting a clearly taxable private property interest from a non-taxable public interest with which it has been commingled.[8] This viewpoint is entirely consistent with the principles enunciated in Raydure v. Board of Sup'rs of Estill County, 183 Ky. 84, 209 S.W. 19 (1919). In the absence of a statute specifically so declaring, we perceive no reason why a private party's investment of money through the device of adding buildings to public property on which it has a lease should or legally can be any less subject to taxation than other assets in which it might have invested the same money. Cf. Trimble v. City of Seattle, 231 U.S. 683, 34 S.Ct. 218, 58 L.Ed. 435 (1914). To hold otherwise would equate the investment with tax-free state and municipal securities, for which there is no legal justification or authority.

The trial court expressly reserved judgment on the question of whether the improvements in this case were subject to assessment. In some instances, probably in reliance upon such cases as Louisville Garage Corporation v. City of Louisville, 303 Ky. 553, 198 S.W.2d 40 (1946), and Steiden Stores, Inc., v. City of Louisville, 303 Ky. 637, 198 S.W.2d 983 (1947), the Jefferson County Tax Commissioner evidently has made a practice of assessing to the lessees the value of improvements on property owned by tax-exempt landlords. He testified, however, that he has never assessed lease-

---

6. Certainly the $971,922.35 expended in the construction of the Standiford Motor Hotel is an investment on which the return will go to Jefferson rather than to the Air Board.

7. Cf. KRS 132.190(3).

8. The question of classification would arise only if the leasehold were assessed at

a different percentage of fair cash value, or taxed at a different rate, from real estate. It is not suggested that a leasehold, though technically "intangible," comes within the purview of KRS 132.-240, which requires the listing of intangibles at "face value."

297

holds as such, which is the basis on which the trial court held, and we agree, that the assessment of this particular leasehold interest is discriminatory. We do not hold that private leaseholds on tax-exempt real estate, if properly evaluated by uniform methods, cannot be taxed.

The judgment is affirmed.