RENDERED: JUNE 14, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1080-MR

GRAND LODGE OF KENTUCKY
FREE AND ACCEPTED MASONS;
ALICE WERBRICH; AMOS OAKS;
ARA DEAN LEURCK; ARNOLD
BLANTON; BETTY BEAGLE; BETTY
COLEMAN; BETTY JANE BRAY;
BOBBIE COX; CARL GAMEL;
CHARLES WILSON; CLAIRE
DAUGHERTY; CLAIRE KENTRUP;
DARLENE SCHIMERMAN;
DOLORES MEYER; DONALD
BEAGLE; EDITH OAKS; EDWARD
GAMEL; EUGENE BARNETT;
FLORA FERGUSON; FRANCES
GREENE; FRANCIS KELLY;
HAROLD ISERAL; IRENE
MORMILE; JACK SCHAAF; JAMES
STEFFEN; JANE WILSON; JEAN
ISERAL; JEANETTE WHITE;
JERALD BRAY; JERRY
TREADWAY; JESSIE EPPINGHOFF;
JOHN NIEDEREGGER; JOHN RICHE;
JOYCE THEUNEMAN; KAY
NIEDEREGGER; LAWRENCE
OSTERHAGE; LOIS TALBERT; LOIS
WILSON; MARGARET KIRK;
MARGARET KRESSER; MARGARET
OSTERHAGE; MARGIE DARBY;
MARIE BARNETT; MARTHA REED;
MARY JO HUNT; MARY SUE
GAMEL; MORRIS REED; MYRTLE
BLANTON; NORA LEDFORD;

PATRICIA BOERGER; PAUL
TALBERT; RAYMOND KENTRUP;
RAYMOND LEURCK; RICH
LAGRANDE; ROBERTA GAMEL;
ROSEMARY RIPPE; SHIRLEY
BURDINE; STAN WERBRICH;
STANLEY SCHIMERMAN; SUE
STEFFEN; THOMAS LOUDERBACK;
VIRGINIA SCHAAF; AND WANDA
HODGE                                                                          APPELLANTS


APPEAL FROM KENTON CIRCUIT COURT
v.        HONORABLE PATRICIA M. SUMME, JUDGE
ACTION NO. 22-CI-00280


DARLENE PLUMMER, KENTON
COUNTY PROPERTY VALUATION
ADMINISTRATOR; CITY OF
TAYLOR MILL; AND KENTUCKY
BOARD OF TAX APPEALS                                                 APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; ACREE AND L. JONES, JUDGES.

THOMPSON, CHIEF JUDGE:  Grand Lodge of Kentucky Free and Accepted

Masons, *et. al*. ("Appellants") appeal from an order of the Kenton Circuit Court

affirming an order of the Kentucky Board of Tax Appeals ("the Board").  On

remand from a prior appeal, the Board calculated the amount of ad valorem taxes

payable by persons possessing non-assignable occupancy interests in residential units owned by Grand Lodge. Appellants argue that the Board erred in affirming the Kenton County Property Valuation Administrator's calculation of these ad valorem taxes. After careful review, we find no error and affirm the order on appeal.

## FACTS AND PROCEDURAL HISTORY

Grand Lodge is a tax-exempt entity which owns a 24-acre parcel of real property situated in Taylor Mill, Kentucky. Because it is a nonprofit entity, Grand Lodge is exempt from ad valorem taxation.[1] The subject parcel was devised to Grand Lodge with the condition that it be used only for Masonic purposes and could not be sold. If Grand Lodge used the property for non-Masonic purposes, title would revert to the United States.

In 2001, Grand Lodge leased the parcel to an affiliated nonprofit entity called Masonic Retirement Village of Taylor Mill, Inc. ("MRV"). MRV was established to provide affordable housing to senior citizens. To further this goal, MRV created a retirement community known as Spring Hill Village, and constructed 48 residential units on the property. The units were available for occupancy for persons aged 55 and over. To acquire a residential unit, an

---

[1] See Kentucky Constitution §170 and *Commonwealth ex. rel. Luckett v. Grand Lodge of Kentucky*, 459 S.W.2d 601 (Ky. 1970).

applicant has to execute a Residential Agreement ("the Agreement"). Per the terms of the Agreement, a resident would pay what was characterized as an entrance fee ranging from $151,000.00 to $252,000.00. The entrance fee entitled the resident to exclusive occupancy of a residential unit, terminated by the death or incapacity of the resident, the resident's relocation to a nursing facility, or 30 days' written notice. Upon termination of the Agreement, the resident or his/her estate was entitled to a full refund of the entrance fee, minus expenses, if termination occurred within 6 months of occupancy. If termination occurred after 6 months of occupancy, the resident or estate was entitled to a refund of 82% of the entrance fee.

In 2011, Taylor Mill and Kenton County filed a petition for declaratory judgment in Kenton Circuit Court against the Kenton County Property Valuation Administrator ("PVA") and the Kentucky Department of Revenue. Taylor Mill and Kenton County argued that the residents' possessory interests were subject to ad valorem taxation. The parties entered into an agreed judgment holding that the residents at Spring Hill Village were subject to ad valorem taxation.

Beginning in 2012, the PVA issued an ad valorem tax assessment to each resident based on the value of the residential unit. The residents appealed the tax assessments to the Board. In 2014, the Board voided the tax assessments upon

concluding that the real property as a whole was exempt from property tax assessment based on Kentucky Constitution §170. The Board determined that the residents were not owners of the real property and did not have sufficient possessory interests in the property to be subject to ad valorem taxation by reason of KRS 132.195(1).

Thereafter, Taylor Mill and Kenton County filed an original action in Kenton Circuit Court to challenge the Board's ruling. In 2015, the circuit court entered a judgment reversing the Board's decision denying ad valorem taxation of the residential units. The court determined that while charitable organizations retain their status as exempt from taxation in accordance with Kentucky Constitution §170, the individual residents are subject to taxation on the fair market value of their possessory interests.

Grand Lodge and the residents appealed to the Court of Appeals. In 2017, a panel of this Court affirmed the Kenton Circuit Court's ruling that Taylor Mill and Kenton County were entitled to assess ad valorem taxes on the residents. In affirming the trial court, the panel focused on the residents' occupancy creating a taxable possessory interest which supplanted the tax-exempt, nonprofit interests of Grand Lodge and MRV. This Court then vacated and remanded the matter to the Kenton Circuit Court for a proper valuation of the taxable interests. The panel held:

The law is well-settled that a leasehold's fair market value for taxation purposes is obtained by subtracting the fair market value of the real property with the leasehold from the fair market value of the real property without the leasehold. *Ky. Dept. of Revenue v. Hobart Mfg. Co.*, 549 S.W.2d 297 (Ky. 1977). Hence, a resident's possessory interest in a unit at the Springhill [sic] Village is only taxable to the extent of its fair market value. *See Pike Cty. Bd. of Assessment v. Friend*, 932 S.W.2d 378 (Ky. App. 1996); *Ky. Tax Comm'n v. Jefferson Motel, Inc.*, 387 S.W.2d 293 (Ky. 1965).

In this case, a review of the record reveals that the PVA neither valued the Resident's interest as a leasehold nor utilized the above formula to determine the fair market value of each Resident's possessory interest. We, therefore, conclude that the PVA erroneously valued the Residents' respective interests and vacate the tax assessments upon such ground. The PVA should consider each Resident's possessory interest as a leasehold for valuation purposes and should obtain the fair market value by subtracting the fair market value of the unit with the Resident's leasehold from the fair market value of the unit without the leasehold. The difference constitutes the taxable fair market value of the Resident's possessory interest in a particular unit.

*Grand Lodge of Kentucky Free and Accepted Masons v. City of Taylor Mill*, No. 2015-CA-001617-MR, 2017 WL 541077 at *5-6 (Ky. App. Feb. 10, 2017).

On remand, the PVA hired an appraiser who applied the *Hobart* formula using the sales comparison approach to determine the tax assessments. Grand Lodge and the residents appealed to the Board, which affirmed the PVA's assessments.

They then filed an original action in Kenton Circuit Court to challenge the Board's decision affirming the PVA's assessments. Grand Lodge and the residents argued before the circuit court that the Board's order was not supported by substantial evidence because it relied on sales comparisons which were materially different from the property at issue. They argued that the appraiser improperly disregarded the restrictions on the property which significantly impaired the market value. They asserted that the deed restrictions, which require Grand Lodge to use the parcel for Masonic purposes only and prevent Grand Lodge from selling the property, result in the property having a fair market value of zero dollars. Taylor Mill, the Kenton County PVA, and the Board responded that Grand Lodge did not offer competent evidence of a contrary assessment sufficient to challenge the PVA's assessment.

In considering the issues presented, the Kenton Circuit Court relied to large degree on *Hobart, supra*, in concluding that the residents – as non-exempt lessees – had a taxable leasehold interest which was properly assessed by the PVA. The court adopted the Board's reasoning that the assessments were correctly based on the value of the residents' possessory interests, not the value of the realty if sold. It went on to reject the petitioners' Equal Protection arguments upon finding that Kenton County's taxation of other entities, such as nursing homes and assisted

living centers, was distinguishable from the facts before it. It sustained the Board's order upholding the PVA's assessments and this appeal followed.

**STANDARD OF REVIEW**

The Kentucky Board of Tax Appeals is owed no deference on questions of law; therefore, we consider the issues before us *de novo*. *Estate of Mcvey v. Commonwealth of Kentucky, Department of Revenue*, 480 S.W.3d 233, 239 (Ky. 2015).

**ARGUMENTS AND ANALYSIS**

Appellants argue that the Kenton Circuit Court erred in affirming the Board's decision sustaining the PVA's assessments of the subject parcels. Appellants contend that the Board failed to strictly apply the *Hobart* formula when it disregarded the use and sale restrictions encumbering the property. They argue that under *Hobart*, the value of the leasehold interest is absolutely dependent on the value retained by the landowner. According to Appellants, since the Board failed to consider the fair market value of Grand Lodge's ownership interest, it necessarily follows that the Board could not properly determine the differential in the fair market values with and without the leasehold interests as required by *Hobart*. Stated differently, Appellants argue that if the value of the landowner's interest is not known, the *Hobart* formula cannot be applied and the Kenton Circuit Court erred in failing to so rule. Appellants also argue that the Board misapplied

-8-

the presumption that the PVA's assessments are correct, and improperly discriminated against Appellants by failing to uniformly assess all residential occupancy interests in tax-exempt properties.

The primary question for our consideration is whether the Kenton Circuit Court properly determined that the PVA and the Board correctly applied *Hobart* on remand. The matter before us presents a unique set of facts which are somewhat distinguishable from *Hobart*. While the *Hobart* landowner and lessor was a tax-exempt entity as in the matter at bar, the realty in *Hobart* was not subject to the same usage and transfer restrictions found in the instant case. The realty in *Hobart* was subject to transfer restrictions, but the lessee had the option to purchase the parcel in the future. In the matter before us, not only do the lessees have no option to purchase the residences, the restrictive covenants prevent the parcel from ever being sold. The only caveat is that title to the property will revert to the United States if Grand Lodge ever ceases to use the property for Masonic purposes. If that occurred, presumably the United States could then sell the parcel.

In addressing this unique set of facts, the Kenton Circuit Court relied in part on the following language in *Hobart*:

> To put the problem in its simplest perspective, fee simple title to real estate and the improvements thereon is no more than a bundle of all of the rights one could have in and to the property. The result of the sifting process, which is required in this peculiar class of cases, is the tax-exempt lessor pays no ad valorem tax on those rights

which it retains but the non-exempt lessee must pay ad valorem tax on those rights which it obtains. The rights conferred by the lease being a part of the bundle of total rights in and to a parcel of realty and not otherwise listed for taxation, the leasehold is taxable as real estate at its fair cash value.

The terms "fair cash value" and "fair market value" are synonymous. In *Commonwealth, Department of Highways v. Sherrod*, Ky., 367 S.W.2d 844, 950 (1963), we held that the fair market value of a leasehold (if any) can be ascertained by simply subtracting the fair market value of the land as a whole if sold subject to the lease from the fair market value of the land as a whole if sold free and clear of the lease. This formula has worked well in condemnation cases. We see no reason why it would not work equally well in taxation cases.

*Hobart*, 549 S.W.2d at 299-300.

Having closely examined the record and the law, we find no error in the Kenton Circuit Court's order affirming the Board's decision. We draw this conclusion from the express language of *Hobart*, wherein the Kentucky Supreme Court stated, "[t]he result of the sifting process, which is required in this peculiar class of cases, is . . . [that] *the non-exempt lessee must pay ad valorem tax on those rights which it obtains*." *Id.* (emphasis added). This language is not ambiguous and is independent of the lessor's status as exempt from taxation. The residents of Spring Hill Village, like the lessee in *Hobart*, are non-exempt lessees who must pay ad valorem tax on the rights they obtain.

-10-

Further illuminating is the Supreme Court's conclusion that, "the leasehold is taxable as real estate at its fair cash value." *Id.* at 300. The residents on appeal possess leasehold interests of value per *Hobart*, as payment in the form of an entrance fee is made to the lessor when the leases commence. Appellants assert that the value of these leaseholds cannot be determined by a strict application of *Hobart*, because the underlying realty is subject to restrictions and cannot be sold. We agree that due to the unique facts presented, a strict application of *Hobart* is not possible in the instant case. Based on *Hobart* and the supportive case law, however, the value of the leaseholds must nevertheless be calculated for purposes of ad valorem taxation.

As noted by Appellees, the value of the leasehold is calculated by "subtracting the fair market value of the land as a whole *if sold* subject to the lease from the fair market value of the land as a whole *if sold* free and clear of the lease." *Id.* (emphasis added). The calculation of any leasehold interest, therefore, is necessarily based on hypothetical fair market values. Because the subject parcel cannot be sold, the PVA based its assessments on the best information available to it at the time, including the calculated values of the residents' leasehold interests. The circuit court properly so held.

Appellants go on to argue that the Board misapplied the presumption of validity set out in KRS 49.220(5). KRS 49.220(5) provides that "[t]he assessed

value shall be prima facie evidence of the value at which the property should be assessed." Appellants direct our attention to the testimony of their certified property appraiser, Eric Gardner, who determined that the underlying value of the realty was zero dollars by virtue of the deed restrictions. Appellants also point to the testimony of the PVA's appraiser, Eric Fagan, who acknowledged that a precise market analysis of the property's value could not be undertaken because there were no comparable properties in the area with the same or similar deed restrictions. The focus of this argument is that Appellants offered compelling evidence sufficient to overcome the presumption that the property was properly assessed, and that the circuit court erred in failing to so rule.

In considering this issue, the Kenton Circuit Court determined that there was insufficient evidence to conclude that the residents' possessory interests have no value, and no evidence that the residents do not benefit from the services of Taylor Mills and Kenton County. To the contrary, the court found that the evidence supports the finding of the Board that the refund of at least 82% of the entrance fee when the resident vacates the property demonstrates that their possession rights have a value of that amount. These conclusions are supported by the record, and we find no basis for concluding that Appellants overcame the statutory presumption of validity.

Lastly, Appellants argue that the tax assessments were applied in a discriminatory manner in violation of various provisions of the Kentucky Constitution. They direct our attention to Madonna Manor and Baptist Life Communities, which they claim received more favorable assessments than those applied to Appellants. We are not persuaded by this argument, as no evidence was adduced that Madonna Manor or Baptist Life Communities employed the same "entrance fee" payment and refund structure employed by Spring Hill Village. Due to the unique deed restrictions in the instant case, there is no basis for concluding that the residents herein were subjected to an improper and discriminatory application of ad valorem tax assessments.

## CONCLUSION

For the foregoing reasons, we affirm the order of the Kenton Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Elizabeth Graham Weber
Justin L. Knappick
Covington, Kentucky

BRIEF FOR APPELLEE THE CITY
OF TAYLOR MILLS:

Jack S. Gatlin
Covington, Kentucky

BRIEF FOR APPELLEE DARLENE
PLUMMER, KENTON COUNTY
PROPERTY VALUATION
ADMINISTRATOR:

Drew C. Harris
Assistant Kenton County Attorney
Covington, Kentucky