RENDERED: DECEMBER 13, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0302-MR

LWAGLVKY 1 LLC, C/O
WALGREEN CO.; BETTY S.
SCHRADER TRUST F/B/O JAMES
DANIEL MILLS JR.; BROADBROOK
LLC; EAST WEST
COMMUNICATIONS CORP. LLC;
HOGAN REAL ESTATE LLC;
HOGAN REAL ESTATE LLC VI;
LWAGLVKY 2 LLC; LWAGLVKY 3
LLC; REALTY INCOME
PROPERTIES 31 LLC; WATTERSON
POINTE LLC; AND WG DST 3                                    APPELLANTS


                    APPEAL FROM JEFFERSON CIRCUIT COURT
v.                  HONORABLE SARAH E. CLAY, JUDGE
                    ACTION NO. 21-CI-005434


COLLEEN YOUNGER, JEFFERSON
COUNTY PROPERTY VALUATION
ADMINISTRATOR AND JEFFERSON
COUNTY BOARD OF ASSESSMENT
APPEALS                                                      APPELLEES


<u>OPINION</u>
<u>AFFIRMING</u>

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; ECKERLE AND A. JONES, JUDGES.

THOMPSON, CHIEF JUDGE: LWAGLVKY 1 LLC, *et al.*, appeals from an order which upheld a decision of the Kentucky Board of Tax Administration ("KBTA"). The order found that the Jefferson County Property Valuation Administrator ("PVA") properly valued thirteen properties owned by Appellants. Appellants argue that the PVA's valuations were not supported by substantial evidence and that the valuations violated the constitutions of Kentucky and the United States. We find no error and affirm.

## FACTS AND PROCEDURAL BACKGROUND

Appellants own property in Jefferson County, Kentucky where thirteen Walgreens stores are in operation. From 1999 to 2014, Walgreens entered into agreements with developers to build Walgreens stores. Developers would buy land chosen by Walgreens and build stores according to certain specifications also dictated by Walgreens. In exchange, Walgreens would lease the property and be responsible for all maintenance, utilities, property taxes, and anything else required to operate these retail stores. Walgreens also paid two or three times as much in rent to the landowners as other similar stores in the area. This large amount of rent was enticement for the developers to take the risk to acquire the land and build the buildings required by Walgreens. The leases also run for decades, some as long as seventy-five years. These leases are called triple-net leases. As Walgreens is

responsible for the property taxes on the subject properties, Walgreens is prosecuting this tax appeal on behalf of the landowners.

For the 2019 property tax year, the Jefferson County PVA assessed the thirteen properties and appraised them with values which ranged from $5,058,670 to $7,888,630. Walgreens believed these assessments were too high and appealed. Walgreens assessed the same properties and gave them values that ranged from $1,800,000 to $3,450,000. The PVA's values were around three times as much as Walgreens' values for each of the properties. The assessed values were also around two or three times larger than other similar stores located in the local areas of the assessed Walgreens. The PVA based their values off of the contract rent prices of the stores. Walgreens based their values off the general market values of similar stores in the local area.[1] The KBTA and Jefferson Circuit Court both affirmed the PVA's values. The court also held that the method the PVA used to value the Walgreens stores was constitutional. This appeal followed.

## ANALYSIS

Kentucky Revised Statutes (KRS) 13B.150(2) sets forth the basic standards for the judicial review of a decision of an administrative agency like the KBTA. KRS 13B.150(2) states:

---

[1] Other factors went into the assessments of the PVA and Walgreens, but this is the most simplified description of how each came to their respective values.

The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the final order or it may reverse the final order, in whole or in part, and remand the case for further proceedings if it finds the agency's final order is:

(a) In violation of constitutional or statutory provisions;

(b) In excess of the statutory authority of the agency;

(c) Without support of substantial evidence on the whole record;

(d) Arbitrary, capricious, or characterized by abuse of discretion;

(e) Based on an ex parte communication which substantially prejudiced the rights of any party and likely affected the outcome of the hearing;

(f) Prejudiced by a failure of the person conducting a proceeding to be disqualified pursuant to KRS 13B.040(2); or

(g) Deficient as otherwise provided by law.

What that means is that this Court's standard of review for an administrative adjudicatory decision is the clearly erroneous standard. *Stallins v. City of Madisonville*, 707 S.W.2d 349, 351 (Ky. App. 1986). A decision is clearly erroneous if it is not supported by substantial evidence. *Id.*

Substantial evidence is defined as evidence, taken alone or in light of all the evidence, that has sufficient probative value to induce conviction in the minds of

-4-

reasonable people.  If there is substantial evidence to support the agency's findings, a court must defer to that finding even though there is evidence to the contrary.  A court may not substitute its opinion as to the credibility of the witnesses, the weight given the evidence, or the inferences to be drawn from the evidence.  A court's function in administrative matters is one of review, not reinterpretation.

*Thompson v. Kentucky Unemployment Ins. Comm'n*, 85 S.W.3d 621, 624 (Ky. App. 2002) (footnotes and citations omitted).  We also review the decision of the administrative agency to make sure the agency did not act in an arbitrary manner, provided sufficient procedural due process, and acted within its statutory powers. *American Beauty Homes Corp. v. Louisville and Jefferson Cnty. Planning and Zoning Commission*, 379 S.W.2d 450, 456 (Ky. 1964).  In addition, we review issues of law *de novo*.  *Hutchison v. Kentucky Unemployment Ins. Comm'n*, 329 S.W.3d 353, 356 (Ky. App. 2010).  Finally, the method of a court's review is also guided by which party prevails before the administrative agency.

When the decision of the fact-finder is in favor of the party with the burden of proof or persuasion, the issue on appeal is whether the agency's decision is supported by substantial evidence, which is defined as evidence of substance and consequence when taken alone or in light of all the evidence that is sufficient to induce conviction in the minds of reasonable people.  Where the fact-finder's decision is to deny relief to the party with the burden of proof or persuasion, the issue on appeal is whether the evidence in that party's favor is so compelling that no reasonable person could have failed to be persuaded by it.

*McManus v. Kentucky Retirement Systems*, 124 S.W.3d 454, 458 (Ky. App. 2003) (citations omitted). In this case, Appellants and Walgreens had the burden of proof.

## ANALYSIS

KRS 132.191 sets forth the relevant ways in which property can be valued for property tax purposes. KRS 132.191 states in relevant part:

> (1) The General Assembly recognizes that Section 172 of the Constitution of Kentucky requires all property, not exempted from taxation by the Constitution, to be assessed at one hundred percent (100%) of the fair cash value, estimated at the price the property would bring at a fair voluntary sale, and that it is the responsibility of the property valuation administrator to value property in accordance with the Constitution.

> (2) The General Assembly further recognizes that property valuation may be determined using a variety of valid valuation methods, including but not limited to:

> > (a) A cost approach, which is a method of appraisal in which the estimated value of the land is combined with the current depreciated reproduction or replacement cost of improvements on the land;

> > (b) An income approach, which is a method of appraisal based on estimating the present value of future benefits arising from the ownership of the property;

> > (c) A sales comparison approach, which is a method of appraisal based on a comparison of the property with similar properties sold in the recent past[.]

Walgreens provided valuations using the cost, income, and sales comparison approaches. The PVA used the income and sales comparison approaches. We will note that the PVA primarily relied on the income approach to assess and value the properties and used the sales comparison approach to show their values aligned with previous sales of other Walgreens stores.

Walgreens' first argument is that the leases of the stores should be ignored for the purposes of valuing the property and the PVA should only value the physical land and improvements upon it. They cite to *Fayette County Bd. of Supervisors v. O'Rear*, 275 S.W.2d 577 (Ky. 1954), to support this argument. In *O'Rear*, E. C. O'Rear owned a 600-acre farm that he leased to another person. The lease term was for ten years and could be renewed for four successive ten-year terms. The PVA in that case valued the land at $135,700. Mr. O'Rear believed that the land was worth $105,000. He also believed that the lease carved out such a large property interest from the land that there should be two separate interests, the leasehold estate and the fee simple interest. Mr. O'Rear believed that the market value of the farm, subject to the lease, was $105,000. The PVA believed the leasehold was not separate from the land itself; therefore, it valued the fee simple land at $135,700. The Court agreed with the PVA and held that there was no separate leasehold estate. *Id.* at 579.

We do not believe Walgreens' interpretation of *O'Rear* is accurate. The PVA did ignore the lease in that case, but nothing in the case states that a lease is irrelevant. The Court held that the property, as a whole, should be considered. *See also Kentucky Tax Commission v. Jefferson Motel, Inc.*, 387 S.W.2d 293 (Ky. 1965), for a brief discussion of *O'Rear*. Furthermore, neither party in *O'Rear* utilized the income approach in valuing the land. The income approach to assessing a property's value, as previously mentioned, "is a method of appraisal based on estimating the present value of future benefits arising from the ownership of the property[.]" KRS 132.191(2)(b). In other words, it is a way to value land based on how much money the land brings in or produces. This is the type of approach one would use when trying to use a lease to assess a property's value. *O'Rear* did not utilize this approach; therefore, it has little merit to the case at hand as the income method was relied upon by the Jefferson County PVA.

The cases of *Jefferson County Property Valuation Administrator v. Ben Schore Company*, 736 S.W.2d 29 (Ky. App. 1987), and *Helman v. Kentucky Board of Tax Appeals*, 554 S.W.2d 889 (Ky. App. 1977), on the other hand, discuss the interplay of real property taxation, leases, and the income approach. These cases show that leases can be considered when valuing property. In fact, *Helman* states,

> [w]here the income approach is used, all jurisdictions, including Kentucky, require that net income and not

gross income be the factor. Other considerations are the *terms of the lease*, such as requirements for maintenance, alterations or improvements, *fixed rent* or percentage of sales; prospective earnings as well as past earnings; *length or duration of the lease*; options at increased or decreased rentals; and, of considerable importance, *the type of tenant and his financial stability*.

*Id.* at 891 (emphasis added). As can be seen from *Helman*, a lease attached to the property and the rents it produces are appropriate measures of a property's income capabilities.

Walgreens' next argument on appeal is that the PVA's valuations were not supported by substantial evidence. Section 172 of the Kentucky Constitution and KRS 132.191(1) state that property shall be assessed at its "fair cash value," which is a price it would bring at a "fair voluntary sale." As previously discussed, Walgreens used the cost, income, and sales comparison approaches to determine the stores values, but the PVA primarily utilized the income approach. All approaches are valid and the KBTA and trial court found the PVA's values more credible.

To determine the values of the properties, the PVA utilized a mathematical formula: potential gross income[2] minus 2.50% of the property

---

[2] Potential gross income is the annual gross contract rent of a property.

owner's expenses, and then divide that result by the capitalization rate.[3]  To determine the capitalization rate, the PVA utilized previous sale amounts from a few local Walgreens and sale amounts from numerous national Walgreens.  The capitalization rate also took into consideration Walgreens' creditworthiness and the remaining term on the leases.  The PVA believed utilizing only other Walgreens was the most accurate way to come to a value because Walgreens consistently pay over market rate rent all over the country and the PVA wanted comparable stores to compare the Walgreens at issue to.

After reviewing the record, the arguments of the parties, and the relevant law, we believe there was substantial evidence to support the PVA's evaluations.  We acknowledge that there was plenty of evidence presented by Walgreens to dispute the PVA's valuations, but the PVA's evidence was substantial and more persuasive to the KBTA.  The value of the properties is based on the fair cash value, which is defined as the price the property would bring at a fair and voluntary sale.  The primary factor a PVA needs to look at is what amount is someone willing to pay for these properties.  Testimony revealed that the Walgreens are being sold for the contract rent amounts.  Even experts testifying on behalf of Walgreens admitted as much.  These properties have long term leases and

---

[3] The capitalization rate is an "interest rate used in calculating the present value of future periodic payments." *Black's Law Dictionary* (7th ed. 1999).

-10-

high, above market rate, guaranteed rents, making them desirable. In fact, one of the properties under dispute in this case was listed for sale during the pendency of this case. It was listed at a sale price of $7,580,000. Walgreens had appraised that same property at $2,300,000, and the PVA had appraised it at $7,390,000. It is clear that the PVA's values are closer to reality than Walgreens' values.

To prevail on appeal, Walgreens' evidence has to be so "compelling that no reasonable person could have failed to be persuaded by it." *McManus*, *supra*. Walgreens provided a plethora of evidence concerning the properties, but contradictory evidence does not guarantee victory. *Thompson*, *supra*. If you distill this case down to its bare bones, the main question is: at what prices are the properties being bought on the open market? The evidence indicates it is the prices appraised by the PVA.

Walgreens also takes issue with the PVA utilizing a mathematical formula to determine the values of the properties. Walgreens alleges that using a mass production method of valuing properties is improper. Our review of case law concerning this issue found that the case of *Dolan v. Land*, 667 S.W.2d 684 (Ky. 1984), disapproved of mathematical formulas being used to mass produce property valuations; however, the case of *Revenue Cabinet, Commonwealth of Kentucky v. Gillig*, 957 S.W.2d 206 (Ky. 1997), held that it was appropriate if some property specific factors were also considered. In this case, we conclude that the formula

-11-

was appropriate. As previously stated, the formula utilized by the PVA to determine the income being produced by the property considered the contract rent, the remaining lease terms, the creditworthiness of Walgreens, and the sales of other Walgreens. These are some of the specific factors set forth in *Helman*, *supra*, which are appropriate to consider when utilizing the income approach for property valuation. Since the PVA considered specific property factors when utilizing the mathematical formula, we find no error.

Walgreens' next argument is that the PVA's valuation violated Sections 171 and 172 of the Kentucky Constitution because the amount of taxes they are being required to pay are double and triple the amount of their neighbors.

> Property taxation in this Commonwealth is primarily controlled by two sections of our constitution. Section 171 states in part that "(t)axes . . . shall be uniform upon all property of the same class subject to taxation within the territorial limits of the authority levying the tax . . . ." This section gives to the General Assembly "the power to divide property into classes and to determine what class or classes of property shall be subject to local taxation." Section 172 prescribes that "(a)ll property, not exempted from taxation by this Constitution, shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale . . . ."
>
> Section 171 means, no more and no less than, that the rate of taxation must be the same for property of the same class. It permits the fixing of different rates for property of different classes. Section 172 contains no such variable. It imposes a single criterion for the assessment of all property fair cash value. Simply stated, Section

> 171 insures [sic] uniform rates of taxation while Section 172 insures [sic] a uniform standard of assessment for taxation.

*Parrent v. Fannin*, 616 S.W.2d 501, 503 (Ky. 1981) (footnote omitted). "Section 171 does not apply to the assessment process . . . . Section 171 merely compels the legislative bodies which fix tax rates to fix a uniform one for property of the same class. Section 172 compels those who assess property for taxation to use a uniform criterion, i.e., fair cash value." *Id.*

> It is beyond cavil that not all parcels of real estate are worth the same amount of money and Section 172 does not require that they be assessed for the same amount of money. What it does require is that each be assessed for the amount of money it would bring at a fair voluntary sale.

*Id.*

In the case at hand, we find no violation of the Kentucky Constitution. The PVA in this case did not utilize a different tax rate for the Walgreens' properties and based the appraisals on the fair cash value of the properties. The reason the property values were so much higher than other retail stores in the area is because the rents Walgreens pays are so much higher. These higher rents are then taken into consideration for the income approach at valuing the properties. If Walgreens were paying similar, local market rate rents like other stores in Jefferson County, then their tax assessments would be lower; however, they are paying two and three times above the market rent. As previously stated, these

-13-

stores are being valued so high because these higher prices are what people are willing to pay for the stores on the open market. In other words, the higher valuations fairly represent the fair cash value.

Walgreens' final argument on appeal is that the PVA's appraisals violate the 14th Amendment, Equal Protection Clause of the Constitution of the United States and the Equal Protection Clause found in Section 2 of the Kentucky Constitution. Walgreens argues that by focusing on the contract rent, as opposed to the local market rent, the PVA is singling Walgreens out for higher taxes.

"The equal protection clause . . . protects the individual from state action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class." *Allegheny Pittsburgh Coal Co. v. Cnty. Comm'n of Webster Cnty., W. Va.*, 488 U.S. 336, 345-46, 109 S. Ct. 633, 639, 102 L. Ed. 2d 688 (1989) (internal quotation marks and citation omitted).

> The 14th Amendment to the United States Constitution requires persons who are similarly situated to be treated alike. . . . Statutes are presumed to be valid and those concerning social or economic matters generally comply with federal equal protection requirements if the classifications that they create are rationally related to a legitimate state interest. Sections 1, 2, and 3 of the Kentucky Constitution provide that the legislature does not have arbitrary power and shall treat all persons equally. A statute complies with Kentucky equal protection requirements if a "reasonable basis" or "substantial and justifiable reason" supports the classifications that it creates.

-14-

*Cain v. Lodestar Energy, Inc.*, 302 S.W.3d 39, 42-43 (Ky. 2009) (footnotes and citations omitted).

We agree that, on first blush, Walgreens seems to be being treated differently. Evidence indicated that the PVA usually considers a generalized market rent of commercial properties when making an appraisal; however, in this case, they considered the actual contract rent. We also acknowledge that the PVA used local and national market data when considering the valuations as opposed to just local data. Even though this treatment is different, we believe the PVA's valuations pass the rational basis test.

As previously discussed, Walgreens is not the typical commercial enterprise because they are paying two and three times more in rent than the local market rent. When considering the income approach for tax appraisals, this higher rent reasonably accounts for the higher valuations. Furthermore, the key consideration the PVA must make when determining appraisal values is a property's fair cash value. Evidence indicates that the higher values propounded by the PVA closely resemble the prices Walgreens stores are being sold for. In this case, because the leases on the Walgreens stores are long term and the rents being paid are above market value, the contract rent amounts become the most reasonable way to determine the value of these properties.

-15-

## **CONCLUSION**

Based on the foregoing, we affirm the judgment of the trial court and conclude that the valuations of the properties at issue were appropriate. There was substantial evidence to support the PVA's appraisals, the appraisals did not run afoul of Kentucky statutory or case law, and the appraisals did not violate the constitutions of Kentucky or the United States.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Mark A. Loyd
Bailey Roese
Stephanie M. Bruns
Louisville, Kentucky

AMICUS CURIAE BRIEF FOR THE
KENTUCKY RETAIL
FEDERATION AND THE
KENTUCKY CHAMBER OF
COMMERCE:

Mark F. Sommer
Elizabeth M. Ethington
Louisville, Kentucky

AMICUS CURIAE BRIEF FOR THE
INSTITUTE FOR PROFESSIONALS
IN TAXATION:

Michele M. Whittington
Lexington, Kentucky

BRIEF FOR APPELLEE COLLEEN
YOUNGER, JEFFERSON COUNTY
PROPERTY VALUATION
ADMINISTRATOR:

Natalie Johnson
Kathryn Meador
Jefferson County Attorney's Office
Louisville, Kentucky